FONDESSY ENTERPRISES, INC., APPELLEE, *v.* CITY OF OREGON, APPELLANT, ET AL.

[Cite as Fondessy Enterprises, Inc. *v.* Oregon (1986), 23 Ohio St. 3d 213.]

(No. 85-395—Decided May 7, 1986.)

*Eastman & Smith, Jamille G. Jamra, Henry N. Heuerman* and *Richard T. Sargeant,* for appellee.

*Nick Batt,* director of law, for appellant.

*Calfee, Halter & Griswold* and *John E. Gotherman,* urging reversal for *amicus curiae,* Ohio Municipal League.

HOFFMAN, J. The issues presented in this case are of vital concern and great public interest to every citizen of Ohio, and more particularly, to those citizens who must reside near or otherwise be in close proximity to hazardous waste landfill facilities. We need not dwell at length upon the severity of the problem of hazardous waste in our state. By its very statutory definition, hazardous wastes (generally the chemical by-products of industry and manufacturing) "[p]ose a substantial present or potential hazard to human health or safety or to the environment when improperly stored, treated, transported, disposed of, or otherwise managed." R.C. 3734.01(J)(2).

Three years ago, in *Clermont Environmental Reclamation Co.* v. *Wiederhold* (1982), 2 Ohio St. 3d 44, 45, we described the disposal of hazardous waste as a "rapidly growing public health problem." This phrase

carries even more weight today, and it is evident that the combined efforts of every level of government (federal, state and municipal) are essential to control and conquer a potentially deadly threat to the public resulting from the disposal of hazardous waste. Recognizing that clear and present danger to its citizens, the appellant responded by producing the legislation in question herein.

For the protection and welfare of its citizens, we believe that every municipality has a compelling need to know, accurately and timely, what hazardous wastes are being disposed of and stored long-term within its city limits. Thus, the sole issue raised by this appeal is whether the legislature in enacting R.C. Chapter 3734 has completely foreclosed and precluded a "home rule" municipality from any and all monitoring of hazardous waste facilities located within its borders.

To begin with, we reaffirm that the appellant is vested with primary authority to enact police power ordinances not in conflict with the state's general laws. Section 3, Article XVIII of the Ohio Constitution grants municipalities the power "* * * to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

Nor can this power of home rule, expressly conferred upon municipalities, be withdrawn by the General Assembly. *Akron* v. *Scalera* (1939), 135 Ohio St. 65, at 66 [13 O.O. 376]. The authority conferred by Section 3, Article XVIII of the Ohio Constitution upon municipalities to adopt and enforce police regulations is limited only by general laws in conflict therewith upon the same subject matter. *Scalera, supra,* at paragraph one of the syllabus.

At the center of the cause *sub judice* is R.C. 3734.05(D)(3) and the construction given to it by this court in *Clermont, supra. Clermont* struck down a township zoning resolution that would have had the effect of banning the continued operations of a preexisting hazardous waste facility already constructed and legally in operation under R.C. Chapter 3734. We said in *Clermont* that R.C. 3734.05(D)(3) was a general law of the state and its language prohibited any political subdivision of the state from "requiring any additional zoning or other approval for the construction and operation of a hazardous waste facility" duly licensed under R.C. Chapter 3734. *Id.* at paragraph one of the syllabus.

Both courts below in the instant case based their decisions on R.C. 3734.05(D)(3) as expressly preempting the appellant from enacting Ordinance No. 12-1984. R.C. 3734.05(D)(3) provides:

"No political subdivision of this state shall require any additional zoning or other approval, consent, permit, certificate, or other condition for the construction or operation of a hazardous waste facility authorized by a hazardous waste facility installation and operation permit issued pursuant to this chapter, nor shall any political subdivision adopt or enforce any law, ordinance, or regulation that in any way alters, impairs, or limits the authority granted in the permit."

In straightforward fashion, we admit that paragraph two of the syllabus of *Clermont* and the holding therein do not entirely comport with each other. Because of the importance of resolving this inconsistency, we cite the language in question:

"2. R.C. 3734.05(D)(3) was enacted by the General Assembly for the protection of the environment of the state and for the health and safety of its citizens as a reasonable exercise of the state's general police power. Such law being a 'general law' to carry out these statewide legislative goals, municipalities are subject to its provisions *notwithstanding the provisions of Section 3, Article XVIII of the Ohio Constitution.*" (Emphasis added.) *Id.* at paragraph two of the syllabus.

"Further, *we hold* that such section of law being a general law enacted within a reasonable exercise of the police power of the state *takes precedence over laws in conflict therewith* enacted by municipalities pursuant to home rule power granted by Section 3, Article XVIII of the Ohio Constitution. Accordingly, the judgment of the court of appeals is hereby affirmed." (Emphasis added.) *Id.* at 50.

Taken together, paragraph two of the syllabus of *Clermont* and its holding should mean that no municipal ordinance may be enacted which conflicts with the state statute. The holding of *Clermont* calls for the application of the conflict test, that still being the same as enunciated by this court in *Struthers* v. *Sokol* (1923), 108 Ohio St. 263, and applied to the instant appeal, *infra.*

If the provisions of R.C. 3734.05(D)(3) do preclude a home rule municipality, with police powers guaranteed it by the Ohio Constitution, from enacting any and all legislation related to the state statute, then that provision of state law must be ruled unconstitutional. However, this court already has held R.C. 3734.05(D)(3) to be constitutional. *Clermont, supra,* at paragraph one of the syllabus. Obviously, then, the instant provision cannot preclude the enactment of legislation such as the instant ordinance at the threshold. The conflict test must be applied.

Furthermore, as "[t]he power of any Ohio municipality to enact local police regulations is derived directly from Section 3 of Article XVIII of the Ohio Constitution and is no longer dependent upon any legislative grant thereof," the same police power cannot be extinguished by a legislative provision. *West Jefferson* v. *Robinson* (1965), 1 Ohio St. 2d 113 [30 O.O.2d 474], paragraph one of the syllabus; *Scalera, supra,* at 66. If R.C. 3734.05(D)(3) were elevated to a level of "express preemption" (its level as a result of the judgments of the courts below), no police power ordinance in the instant field would survive long enough to face a conflict test against a state statute. Our review of the judgments of the courts below reveals to this court that both courts reasoned and ruled as they did on preemption grounds exclusively rather than applying the conflict test of *Struthers,* as most recently was accomplished by this court in *Weir* v. *Rimmelin* (1984), 15 Ohio St. 3d 55.

We hold that the language of R.C. 3734.05(D)(3) cannot be employed to nullify the police power granted the city of Oregon by the Home Rule Amendment. *R.C. 3734.05(D)(3) may be utilized only to limit the legislative power of municipalities by the precise terms it sets forth.* R.C. 3734.05(D)(3) provides a conflict standard by which to judge ensuing legislation in the instant arena of environmental regulation.

For example, if the instant city ordinance would have required that Fondessy apply for a city permit for construction or operation of its land-fill, the instant city ordinance would be directly in conflict with the first part of R.C. 3734.05(D)(3) and would be declared invalid. As to the second part of R.C. 3734.05(D)(3), the instant city ordinance does not "alter, impair, or limit the authority" granted to Fondessy by the Hazardous Waste Facility Board, either in the construction or physical operation of its facility. Merely by requiring administrative records to be kept daily and provided to appellant monthly, the city is not impeding Fondessy's seminal operations in any substantive or significant way. As stated by appellant in opening statement at the hearing conducted by the trial court herein, "there's nothing that this ordinance proposes to do which requires them [Fondessy] to have taller fences, or more guards or more monitoring wells or anything other than that which is required in the state law."

A municipal police power ordinance which does not alter, impair, or limit the operation of a state-licensed hazardous waste facility is not in conflict with R.C. Chapter 3734, and may be held valid. The authority of the Environmental Protection Agency to license, supervise, inspect, and regulate hazardous waste facilities does not preclude municipalities from enacting police power ordinances which do not conflict with that authority.

Not only does the instant city ordinance pass muster when set against limiting language of R.C. 3734.05(D)(3), the ordinance survives the conflict test of *Struthers, supra.* That general test is: "In determining whether an ordinance is in 'conflict' with general laws, the test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa." *Id.* at paragraph two of the syllabus.

Specifically, does Ordinance No. 12-1984 allow anything that R.C. Chapter 3734 prohibits, or conversely, does Ordinance No. 12-1984 prohibit anything permitted by R.C. Chapter 3734? There is no proscriptive language in Ordinance No. 12-1984. Thus, it passes the latter half of the test on its face.

Does Ordinance No. 12-1984 permit anything forbidden by R.C. Chapter 3734? We think not. The maintenance of daily records and their submission to the city along with a fee is not contained in or required by the state statute, and certainly is not proscribed therein.

The instant ordinance does not conflict with R.C. Chapter 3734 on either score of *Struthers* and must be held valid. We find the imposition of a fee to cover the city's cost of monitoring and digesting the instant information to be a valid and reasonable exercise of its police powers.

There is no derogation of any state-mandated requirement herein. As stated, *supra,* there is no statutory requirement in R.C. Chapter 3734 for providing the data the city of Oregon seeks through Ordinance No. 12-1984, and we now proceed to the final reason to declare the instant city ordinance valid.

We reject the argument of appellee that R.C. 3734.10 and related sections within R.C. Chapter 3734 provide Oregon with a mechanism to monitor a facility such as appellee's. R.C. 3734.10 permits appellant to seek relief against a hazardous waste facility for a violation of R.C. Chapter 3734. However, this route is of little succor to a municipality after a toxic waste spill or other similar event has threatened the lives of its inhabitants. Triggering this provision is tantamount to calling the fire department after the house has burned down.

Additionally, R.C. 3734.10 calls for preliminary and permanent injunctive relief against any operator "threatening to violate" any provision of R.C. Chapter 3734. Since it is specious to believe any hazardous waste operator would *literally* threaten to violate the instant chapter (said violation calling for minimum penalties of two years' imprisonment and/or a $10,000 fine), we construe this language to mean a violation that *appears* to the complainant to be in the offing. How else, other than through information acquired on a continuous basis, could a municipality such as Oregon perceive a "threatening violation?" What the appellant seeks through its legislation is the necessary "ammunition," in data form, to "prosecute to termination" (the precise words of R.C. 3734.10), if such prosecution is required.

Therefore we hold that where state laws and municipal ordinances concerning the monitoring of hazardous waste landfill facilities located within the corporate limits of the city do *not* conflict, the state and municipality have concurrent authority under their respective police powers to enforce their respective directives within the corporate limits of the city.

Accordingly, the judgment of the court of appeals is reversed. The city of Oregon, as well as the state of Ohio, has the authority to enforce monitoring of hazardous waste facilities located inside the corporate limits of the city. Ordinance No. 12-1984 does not constitute an additional condition for the construction or operation of the hazardous waste facility, nor does the ordinance alter, impair, or limit the authority of the landfill operators to operate said facility under R.C. Chapter 3734. This cause is remanded to the trial court for a determination of the issues left unresolved by that court.

*Judgment reversed*
*and cause remanded.*

CELEBREZZE, C.J., LOCHER and HOLMES, JJ., concur.

SWEENEY, C. BROWN and WRIGHT, JJ., dissent.

HOFFMAN, J., of the Fifth Appellate District, sitting for DOUGLAS, J.

LOCHER, J., concurring. I concur completely with Judge Hoffman's analysis and decision to uphold the validity of home rule in Ohio. I would only add some additional considerations that have a bearing on this matter.

During the course of the constitutional convention in April 1912 there was much debate concerning the efficacy of the home rule proposals. See, generally, Vaubel, Municipal Home Rule in Ohio (1978). Professor George W. Knight, a delegate for Franklin County, was instrumental in supporting the home rule provision against several arguments raised during the course of the debates. These statements are pertinent to a full understanding of home rule in Ohio. On April 29, 1912, Knight set forth the general purpose of the home rule provision, in pertinent part, as follows:

"* * * [T]his proposal undertakes pretty nearly to reverse that [prior] rule and to provide that municipalities shall have the power to do those things which are not prohibited, that is, those things with reference to local government, with reference to the affairs which concern the municipality, which are not forbidden by the lawmaking power of the state, or are not in conflict with the general laws of the state under the police power and the general state regulation. So the presumption would now become a presumption in favor of the lawfulness of the municipalities' act, and that presumption would only be overcome by showing that the power had been denied to the municipalities or that it was against the general laws of the state." 2 Ohio Constitutional Convention, Proceedings and Debates (1913) 1433.

Because the power of a home rule municipality was to be derived from the Constitution, the laws of the municipality would be every bit as authoritative and effective as a state law so long as the local law did not diminish the general state law:

"It is not intended to invade state authority in the least, but to make clear that the municipality has the right to enact such local police, sanitary and other similar regulations as are not in conflict with general laws. It can not take away, however, for instance, take the quarantine laws. A city can not make them less strict than the state, but it can make them more strict." Id. at 1439.

Clearly, in the instant controversy, Oregon's ordinance in no way lessens the state statute. Under such circumstances this court is constitutionally obligated to uphold the city ordinance or forfeit our institutional role as guardian of the state Constitution. Addressing the spirit behind the movement for a Home Rule Amendment, the words of Robert Crosser, a lawyer delegate from Cuyahoga County, further support this position:

"The advocates of home rule merely insist that municipalities be al-

lowed to solve their own problems and control their own affairs, independent of outside authority, whether that authority be a monarchy, an oligarchy or the people of a whole state. In short, the cities merely ask that the principle of self-government be extended to them. At the present time they find themselves in the predicament of the women, the only other beings in the state denied the right to self government.

"* * *

"* * * [T]he people of the cities are left in a position where they have absolutely no control over their own destinies, and they are blamed for not taking an interest in the city government and for lacking in civic patriotism and righteousness." *Id.* at 1483-1484 (April 30, 1912).

It is my view that the adoption of home rule in Ohio was as important a step in government to this state as the federal Constitution was to the United States as a whole. To disenfranchise communities in the name of expediency and to relegate home rule to the dust bins of benign neglect cannot be countenanced by this court. Today's decision should serve to revivify our constitutional commitment to the people of this state to control their own destinies.

In view of the dangers posed by hazardous substances to a community, one would be hard pressed to conceive of an area more conducive to the constructive utilization of a municipality's police, health and safety powers. Ordinance No. 12-1984 complements and, in effect, exceeds the basic requirements of R.C. Chapter 3734. In such circumstances this court has consistently affirmed a municipality's home rule prerogatives. See, *e.g., Niles* v. *Howard* (1984), 12 Ohio St. 3d 162; Vaubel, *supra,* at 650-813. As Judge Hoffman has pointed out, and I would reemphasize, pecuniary ex-post-facto relief from a hazardous waste accident will do little to bring back a human life or restore a livelihood. Only with a full disclosure of information will a city be able to take the necessary steps to limit the damage of an accident. Similarly, with the propensity of companies to seek the safe harbors of bankruptcy in the event of catastrophic liability, it makes far more sense for a city such as Oregon to take whatever preventive steps are necessary to prepare for the worst. In this manner a city may, to some degree, have control over its own future as the framers of the Home Rule Amendment had intended.

With the austere domestic budgets and Gramm-Rudman cuts looming, the federal revenue sharing spigot is being closed. The problem is compounded because the finances of the state of Ohio cannot pick up the slack. Consequently, more and more responsibilities fall upon the shoulders of local officials. Due to the foresight of the framers of the 1912 Constitution in adopting home rule, and the subsequent application of the doctrine by this court, the inevitable shifting of federal activities to state and local governments need not be an invitation to disaster but an invitation to greater control by the people of this state over their own destinies and an opportunity for municipalities to enact legislation complementing state legislation.

Nor have the federal and state control and oversight of hazardous waste sites been as successful as had been hoped. Indeed, the "Love Canals" are proliferating — no less than nineteen thousand uncontrolled hazardous waste sites have been inventoried and over five hundred have met the criteria for inclusion in the National Priorities List under the "Superfund Law." All the more reason for the local entity whose concern is the most grave to keep its fixed gaze upon the dump sites and to make certain the good earth is not prostituted.

Accordingly I concur in today's majority opinion.

CLIFFORD F. BROWN, J., dissenting. I am convinced that the instant cause is a simple case of conflict between state and local laws, to which the "home rule" provision of Section 3, Article XVIII of the Ohio Constitution does not apply. Therefore, I dissent.

By imposing a permit fee on off-site hazardous waste deposited in the city of Oregon, the city has clearly required an additional condition for the operation of a hazardous waste facility in direct contravention of the ban on such additional conditions contained in R.C. 3734.05(D)(3). As acknowledged by the majority, this court has already held that R.C. 3734.05(D)(3) is a general law of this state and that local laws which conflict therewith are invalid. *Clermont Environmental Reclamation Co.* v. *Wiederhold* (1982), 2 Ohio St. 3d 44, paragraphs one and two of the syllabus. This statute, in clear and comprehensive language, expressly prohibits the imposition of *any* additional condition for the operation of state-authorized hazardous waste facilities. I am confounded by the majority's finding that appellant's imposition of a permit fee and additional book-keeping obligations somehow does not conflict with the state statute. The undeniable effect of the city ordinance *sub judice* is that appellee is barred from operating its waste facility unless it pays the city permit fee. This is clearly an additional condition prohibited by R.C. 3734.05(D)(3). Chapter 720 of the Oregon Codified Ordinances, as adopted under Ordinance No. 12-1984, not only requires additional bookkeeping and the payment of a fee, but it further imposes a criminal sanction of imprisonment and/or fine for failure to comply. City of Oregon Codified Ordinances Section 720.99. These potential criminal sanctions clearly impair or limit the authority granted to appellee in its state permit in contravention of R.C. 3734.05(D)(3).

The test for determining if a local ordinance impermissibly conflicts with a general state law is whether the ordinance permits an act which the statute forbids. *Struthers* v. *Sokol* (1923), 108 Ohio St. 263, paragraph two of the syllabus. The state statute in this case prohibits imposition of an additional condition; the ordinance requires an additional fee and supplemental bookkeeping. The conflict is patent.

By its enactment of R.C. Chapter 3734, the General Assembly has evinced its intention to create a *state-wide* regulatory structure of uniform operation. This intent is not only manifested in R.C. 3734.05(D)(3) itself,

but also in R.C. 3734.02(A) (providing that the Director of Environmental Protection shall adopt rules "having uniform application throughout the state"). Any ordinance which differs from this statutory scheme by imposing more restrictive requirements is in conflict therewith and invalid. *Eastlake* v. *Bd. of Bldg. Standards* (1981), 66 Ohio St. 2d 363, 369 [20 O.O.3d 327]. The ordinance in the instant cause imposes stricter requirements than the state laws. It is clearly invalid.

Through the use of rather strained reasoning, the majority states that R.C. 3734.05(D)(3) may be utilized only to limit, rather than nullify, the legislative power of municipalities by the precise terms it sets forth. And yet the majority refuses to apply the very limitation embodied in that statute. R.C. 3734.05(D)(3) clearly limits the power of municipalities to create additional requirements for licensed operators of hazardous waste facilities. By ignoring this fact, the majority frustrates the intent of the General Assembly as clearly expressed in that statute and indulges in judicial legislation.

For these reasons, I would affirm the judgment of the court of appeals.

SWEENEY and WRIGHT, JJ., concur in the foregoing dissenting opinion.