ENVIROSAFE SERVICES OF OHIO, INC., f.k.a.
Fondessy Enterprises, Inc., Appellant,

v.

CITY OF OREGON et al., Appellees.

[Cite as *Envirosafe Serv. of Ohio, Inc. v. Oregon* (1992), 80 Ohio App.3d 516].

Court of Appeals of Ohio,
Lucas County.

No. L-90-389.

Decided June 5, 1992.

*Richard M. Markus* and *Margaret M. Koesel,* for appellant.

*Paul Goldberg* and *Mark E. Lupe,* for appellee city of Oregon.

*Per Curiam.*

This is an appeal from a summary judgment of the Lucas County Court of Common Pleas granted in favor of appellee, the city of Oregon. The trial court held that the city could properly require a permit fee in connection with a hazardous waste landfill facility operated by appellant, Fondessy Enterprises, Inc. ("Fondessy").[1] For the reasons discussed below, we affirm the decision of the trial court.

The facts of this case are as follows. Fondessy is the owner and operator of a hazardous waste landfill facility located in Oregon, Ohio. Fondessy has

---

1. Fondessy is now known as "Envirosafe Services of Ohio, Inc."

operated the landfill since 1981 under a permit issued by the state of Ohio pursuant to R.C. Chapter 3734.

On January 23, 1984, the city of Oregon adopted Ordinance No. 12–1984. Ordinance No. 12–1984 requires a hazardous waste landfill operator to keep daily records of the amount, type and volume of hazardous waste placed in the landfill and to remit such records, along with a fee of $1 per ton of hazardous waste, to the city's clerk auditor on a monthly basis. Ordinance No. 12–1984 also provides for the establishment of area services and programs in order to monitor hazardous waste land facilities. Finally, Ordinance No. 12–1984 provides for a credit for fees collected under the ordinance against any fees required under state law.

Fondessy filed a declaratory judgment action seeking to have Ordinance No. 12–1984 declared invalid. Fondessy alleged that the state had preempted the regulation of hazardous waste facilities with the passage of R.C. Chapter 3734 and, therefore, local regulation was precluded. Alternatively, Fondessy argued that Ordinance No. 12–1984 violated the Due Process and Equal Protection Clauses of the Constitutions of the United States and the state of Ohio.

The trial court bifurcated the proceedings and initially addressed only the preemption issue, specifically reserving a ruling on the constitutional arguments until a later time. The trial court, in ruling on the preemption issue, held that R.C. 3734.05(E)(3)[2] precluded the operation of Ordinance No. 12–1984. The trial court's decision was ultimately reversed by the Supreme Court of Ohio in *Fondessy Enterprises, Inc. v. Oregon* (1986), 23 Ohio St.3d 213, 23 OBR 372, 492 N.E.2d 797. The Supreme Court held that Ordinance No. 12–1984 was not in conflict with R.C. Chapter 3734 on the ground that "[t]he maintenance of daily records and their submission to the city along with a fee is not contained in or required by the state statute, and certainly is not proscribed therein." *Id.* at 217, 23 OBR at 375, 492 N.E.2d at 801. The case was remanded to the trial court for consideration of the remaining constitutional issues.

Upon remand, the trial court awarded summary judgment in favor of the city on the grounds that (1) the fee imposed by Ordinance No. 12–1984 did not conflict with and is not preempted by state law; (2) the fee was not a tax and, therefore, is not preempted by state law; and (3) Ordinance No. 12–1984 did not violate the constitutional requirements of due process and equal protection.

---

**2.** At the time of the trial court's decision, R.C. 3734.05(E)(3) was numbered R.C. 3734.-05(D)(3).

It is from such judgment that Fondessy raises the following five assignments of error:

"I. The trial court erroneously granted the city's summary judgment motion, since R.C. 3734.05(E) prohibits the city from charging a fee that imposes an unlawful condition on plaintiff's operations and impairs or limits the authority approved in plaintiff's permit.

"II. The trial court erroneously granted Oregon's summary judgment motion, since the city's 'permit fee' denies plaintiff due process by imposing a fee which has no rational relationship to the activity it seeks to support.

"III. The trial court erroneously denied plaintiff's summary judgment motion, since R.C. 3734.18(A) imposes a state tax which preempts Oregon from charging another $200,000 annually to 'monitor' plaintiff's hazardous waste landfill.

"IV. The trial court erroneously denied plaintiff's summary judgment motion, since R.C. 3734.18(D) imposes a municipal tax which preempts Oregon from charging another $200,000 annually to 'monitor' plaintiff's hazardous waste landfill.

"V. The trial court erroneously granted the city's summary judgment motion, since R.C. 3734.18(A) and R.C. 3734.18(D) collectively impose taxes which preempt Oregon from charging another $200,000 annually to 'monitor' plaintiff's hazardous waste landfill."

As its first assignment of error, Fondessy argues that the fee required under Ordinance No. 12–1984 is in conflict with state law and therefore is preempted. Fondessy argues that the Supreme Court, in its previous decision, held only that the reporting requirement, rather than the fee imposed, under Ordinance No. 12–1984 was not in conflict with state law.

In *Fondessy*, the Supreme Court set forth the test adopted in *Struthers v. Sokol* (1923), 108 Ohio St. 263, 140 N.E. 519, to determine whether a municipal ordinance is in conflict with the general state statute. That test is as follows:

"Whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice-versa." *Fondessy, supra,* at paragraph two of the syllabus, following paragraph two of the syllabus in *Struthers, supra.*

In applying the *Struthers* test to the facts at hand, the Supreme Court in *Fondessy* specifically addressed both the reporting requirements and the imposition of the fee required under Ordinance No. 12–1984 as follows:

"Does Ordinance No. 12–1984 permit anything forbidden by R.C. Chapter 3734? We think not. The maintenance of daily records and their submission to the city . *along with a fee* is not contained in or required by the state statute, and certainly is not proscribed therein.

"The instant ordinance does not conflict with R.C. Chapter 3734 on either score of *Struthers* and must be held valid. We find *the imposition of a fee to cover the city's cost of monitoring* and digesting the instant information to be a valid and reasonable exercise of its police powers.

" * * *

" * * * The city of Oregon, as well as the state of Ohio, has the authority to enforce monitoring of hazardous waste facilities located inside the corporate limits of the city. Ordinance 12–1984 *does not constitute an additional condition* for the construction or operation of the hazardous waste facility, nor does the ordinance alter, impair, or limit the authority of the landfill operators to operate said facility under R.C. Chapter 3734." (Emphasis added.) *Fondessy, supra,* 23 Ohio St.3d at 217–218, 23 OBR at 375, 492 N.E.2d at 801.

We find that the issue of whether the fee imposed under Ordinance No. 12–1984 conflicts with general state law has previously been decided by the Supreme Court in the *Fondessy* decision. The doctrine of the law of the case requires that "[a]bsent extraordinary circumstances * * * an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case." *Nolan v. Nolan* (1984), 11 Ohio St.3d 1, 11 OBR 1, 462 N.E.2d 410, syllabus. In the present case, there are no extraordinary circumstances that would lead us to disregard the Supreme Court's prior ruling. Accordingly, the first assignment of error is found not well taken.

▮ As its second assignment of error, Fondessy argues that the fee required pursuant to Ordinance No. 12–1984 is violative of due process under the United States and Ohio Constitutions.

The right of due process guaranteed under Section 16, Article I of the Ohio Constitution is equivalent to that under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Sedar v. Knowlton Constr. Co.* (1990), 49 Ohio St.3d 193, 199, 551 N.E.2d 938, 944. In *Mominee v. Scherbarth* (1986), 28 Ohio St.3d 270, 274, 28 OBR 346, 349, 503 N.E.2d 717, 720, the Supreme Court of Ohio addressed the validity of legislation and the guarantees of due process as follows:

"In testing the constitutionality of a legislative enactment, we begin with the common ground that all such enactments enjoy a presumption of constitutional validity. *Schwan* [*v. Riverside Methodist Hosp.* (1983) ] *supra* [6 Ohio St.3d 300] at 301 [6 OBR 361, 362, 452 N.E.2d 1337, 1338]; *Benevolent Assn. v. Parma* (1980), 61 Ohio St.2d 375, 377 [15 O.O.3d 450, 451, 402 N.E.2d 519, 521]; *State, ex rel. Taft, v. Campanella* (1977), 50 Ohio St.2d 242, 246 [4 O.O.3d 423, 425–426, 364 N.E.2d 21, 24]; *State, ex rel. Dickman, v. Defen-*

*bacher* (1955), 164 Ohio St. 142 [57 O.O. 134, 128 N.E.2d 59], paragraph one of the syllabus.

"A legislative enactment will be deemed valid on due process grounds ' * * * [1] if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public and [2] if it is not unreasonable or arbitrary.' *Benjamin v. Columbus* (1957), 167 Ohio St. 103 [4 O.O.2d 113, 146 N.E.2d 854], paragraph five of the syllabus. See, also, *Downing v. Cook* (1982), 69 Ohio St.2d 149 [23 O.O.3d 186, 431 N.E.2d 995]; and *DeMoise v. Dowell* (1984), 10 Ohio St.3d 92 [10 OBR 421, 461 N.E.2d 1286]."

The long-established test of due process, where fundamental rights are not involved, is that where the legislative enactment rationally relates to any possible legitimate end of government, due process is satisfied. See *Granzow v. Montgomery Cty. Bur. of Support* (1990), 54 Ohio St.3d 35, 37, 560 N.E.2d 1307, 1309; *Exxon Corp. v. Governor of Maryland* (1978), 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91.

In the present case, Section 720.01 of Ordinance No. 12–1984 states the purposes for which the fees, collected pursuant to the ordinance, are to be used:

"To protect the public health, safety and welfare of Oregon citizens by generating funds not for general revenue purposes but for the sole purpose of producing sufficient funds to monitor ground water and surface water contamination; to monitor air pollution standards; to provide costs of road maintenance for hazardous waste transportation to such sites; to provide the extraordinary expenses of police and fire protection to monitor the disposal of hazardous wastes; to provide funds necessary for insurance premiums for liability insurance for City of Oregon for potential future claims against the City resulting from the operation of said hazardous waste landfills; to provide funds for engineering, legal, and other professional services necessary to monitor the operation and results of the hazardous waste landfills to ensure that all state and federal regulations are being complied with; and to provide funds for other expenses directly related to monitoring the operation of said hazardous waste landfill sites."

Section 720.04 specifically limits expenditures from the fund created by the fees as follows:

"Such funds shall not be used for any general fund purpose of the City of Oregon, Ohio, but shall be restricted solely to an expenditure in order to protect the public health, safety and welfare of Oregon citizens for expenses directly related to the operation of the hazardous waste landfill facility including but not limited to the following items: To provide sufficient funds in order to meet the specialized and local cost of Oregon resulting from the

placement of hazardous wastes in such landfill in providing adequate fire protection; adequate police protection; proper monitoring of litter control of the trucks utilizing the roadways to the hazardous waste landfill; cost of road maintenance for the weight of the trucks utilizing safe roads to the hazardous waste landfill site; cost of necessary insurance premiums for liability insurance for the City of Oregon for potential future claims against the City of Oregon resulting from the operation of said hazardous waste landfill; the cost of engineering legal, and other professional services necessary to monitor the operation and results of the operation of the hazardous waste landfill site to ensure that all state and federal regulations are being fully complied with; the cost of having scientific analysis of surface water and/or ground water contamination during the operation of the hazardous waste landfill; the cost of monitoring air pollution standards resulting from the operation of the hazardous waste landfill site, and other expenses directly related to the operation of said hazardous waste landfill."

On its face, we find Ordinance No. 12–1984 satisfies the requirements of due process. The regulation of hazardous waste landfills is certainly a legitimate governmental purpose. As stated in Justice Locher's concurring opinion in *Fondessy, supra,* 23 Ohio St.3d at 220, 23 OBR at 377, 492 N.E.2d at 803:

"In view of the dangers posed by hazardous substances to a community, one would be hard pressed to conceive of an area more conducive to the constructive utilization of a municipality's police, health and safety powers."

Further, the ordinance's stated purposes are all directly related to the regulation of hazardous waste landfills. The monitoring of air and water quality, providing for additional police and fire training, and the hiring of necessary experts are all within the city's legitimate exercise of its powers to protect the health, safety and welfare of its residents.

Fondessy further argues that the amount generated by the fee, estimated at $200,000 per year, is not reasonable. However, a review of the record shows that the fee imposed under Ordinance No. 12–1984 bears a reasonable relationship to the costs of implementing the various monitoring programs and services proposed under the ordinance. Therefore, we find, as a matter of law, that Ordinance No. 12–1984 does not violate due process under the United States and Ohio Constitutions. Accordingly, the second assignment of error is found not well taken.

█ The third, fourth and fifth assignments of error will be addressed together. Under these assignments of error, Fondessy argues that the fee imposed under Ordinance No. 12–1984 is, in reality, a tax which is preempted by R.C. 3734.18(A), which allegedly imposes a state excise tax on the operation

of hazardous waste landfills, and R.C. 3734.18(D), which allegedly imposes a second tax that is paid directly to local governments.

In addressing these assignments of error, this court must initially determine whether the charge imposed under Ordinance No. 12–1984 is, in fact, a tax rather than a fee.

It is well-settled law that "a 'fee' is in fact a 'tax' if it exceeds the 'cost and expense' to government of providing the service in question." *Granzow, supra,* 54 Ohio St.3d at 38, 560 N.E.2d at 1310, citing *State ex rel. Gordon v. Rhodes* (1952), 158 Ohio St. 129, 48 O.O. 64, 107 N.E.2d 206, paragraph two of the syllabus. As this court discussed under the second assignment of error, Ordinance No. 12–1984 specifically provides that the fees generated are for the purposes of regulating hazardous waste landfills. We also found that the amount of such fees bears a reasonable relationship to the cost of the proposed regulatory programs and services. We can only conclude that the charge imposed under Ordinance No. 12–1984 is a permissible fee rather than a tax.

■ Further, we do not find that the fees imposed under R.C. 3734.18(A) and (D) are, in reality, taxes.

R.C. 3734.18(F) provides that the fees generated under R.C. 3734.18(A) are to be used in the following manner:

"The environmental protection agency and the hazardous waste facility board may use moneys in the fund for administration of the hazardous waste program established under this chapter and, in accordance with this section, may request approval by the controlling board for such use on an annual basis. In addition, the agency may use and pledge moneys in the fund for repayment of and for interest on any loans made by the Ohio water development authority to the agency for the hazardous waste program established under this chapter without the necessity of requesting approval by the controlling board, which use and pledge shall have priority over any other use of the moneys in the fund.

"If moneys in the fund that the agency uses in accordance with this chapter are reimbursed by grants or other moneys from the United States government, the grants or other moneys shall be placed in the fund. If moneys in the fund that the agency uses to pay the state's long-term operation and maintenance costs or matching share for actions taken under the 'Comprehensive Environmental Response, Compensation, and Liability Act of 1980,' 94 Stat. 2767, 42 U.S.C. 9601, as amended, are reimbursed by grants or other moneys from any person, the reimbursed moneys shall be placed in the fund for reuse as the state's long term operation and maintenance costs or

matching share for such actions, *and not in the general revenue fund or the hazardous waste clean-up fund created in section 3734.28 of the Revised Code."* (Emphasis added.)

Further, the relevant portion of R.C. 3734.18(D) provides that the second fee imposed, which was payable to local governments, is to be used in the following manner:

"Moneys received by a municipal corporation under this division shall be paid into a special fund of the municipal corporation *and used exclusively for the purposes of conducting* reviews of applications for hazardous waste facility installation and operation permits for new or modified hazardous waste landfills located or proposed within the municipal corporation, conducting emergency response actions with respect to releases of hazardous waste from facilities located within the municipal corporation, *monitoring operation of such hazardous waste facilities,* and conducting waste management planning programs within the municipal corporation through employees of the municipal corporation or pursuant to contracts entered into with persons or political subdivisions. Moneys received by a board of county commissioners under this division shall be paid into a special fund of the county and shall be used exclusively for those purposes within the unincorporated area of the county through employees of the county district or pursuant to contracts entered into with persons or political subdivisions." (Emphasis added.)

On its face, R.C. 3734.18 specifically confines expenditures of fees imposed under the statute to activities which are directly related to the disposal of hazardous waste in Ohio. Further, Fondessy has presented no evidence to dispute that the fees imposed under the statute are reflective of the state of Ohio's costs in administering the activities. Therefore, we cannot conclude that the fees imposed under the statute are in fact a tax.

Having determined that there is no evidence to establish that either Ordinance No. 12–1984 or R.C. 3734.18 imposes a tax, Fondessy's preemption argument must fail as a matter of law. Accordingly, the third, fourth and fifth assignments of error are found not well taken.[3]

On consideration whereof, the court finds substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed.

*Judgment affirmed.*

HANDWORK, P.J., GLASSER and MELVIN L. RESNICK, JJ., concur.

---

**3.** Fondessy has not raised on appeal its claim that Ordinance No. 12–1984 violates the Equal Protection Clause.