AMERICAN FINANCIAL SERVICES ASSOCIATION, Appellee,

v.

CITY OF CLEVELAND, Appellant.

[Cite as *Am. Financial Serv. Assn. v. Cleveland,* 159 Ohio App.3d 489, 2004-Ohio-6416.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 83676.

Decided Dec. 2, 2004.

490

Vorys, Sater, Seymour & Pease and John Winship Read; and John Kulewicz, for appellee.

Subodh Chandra, Director of Law, Thomas J. Kaiser, Chief Trial Counsel, Thomas L. Anastos, and Barbara A., Langhenry, Assistant Directors of Law, for appellant.

Jim Petro, Ohio Attorney General, Holly J. Hunt and Sharon A. Jennings, Assistant Attorneys General, for intervenor Ohio Attorney General.

---

SEAN C. GALLAGHER, Judge.

{¶ 1} Appellant, the city of Cleveland, appeals the judgment of the Cuyahoga County Court of Common Pleas granting summary judgment in favor of appellee, American Financial Services Association ("AFSA"). For the reasons adduced below, we reverse.

{¶ 2} The following facts give rise to this appeal. AFSA, a national trade association for market-funded providers of financial services to consumers and small businesses, filed this action seeking injunctive and declaratory relief with respect to a series of ordinances enacted by the city to control so-called predatory lending. AFSA challenged the ordinances as violating the Home Rule Amendment to the Ohio Constitution, due process guarantees, and the state statutory structure.

{¶ 3} The local ordinances were instituted because many senior citizens and homeowners in the city of Cleveland were targeted by unethical home-improvement contractors and mortgage lenders using so-called predatory lending practices. "Predatory lending" can be defined as the practice of deceptive mortgage lending where a lender charges fees and interest that are greater than the risk presented by the borrower.[1]

{¶ 4} Many low- and moderate-income homeowners in Cleveland were unable to obtain conventional, legitimate financing. That situation allowed predatory lenders to thrive, and their practices unfairly stripped homes of equity value and resulted in a number of unjust home foreclosures. Often, through fraudulent

---

1. The three most common predatory lending practices are "stripping," "flipping," and "packing." Stripping is actually equity stripping, whereby a lender makes a loan that it knows the borrower cannot possibly repay, resulting in the foreclosure of the home and a loss of equity. "Flipping" occurs when the lender gets the borrower to repeatedly refinance the original mortgage. Each time the mortgage is flipped, the lender adds and profits from additional fees that are embedded in the new loan. This process "bleeds the equity from the home exponentially in each refinancing without providing any benefit to the borrower." "Packing" occurs when the lender adds other services onto the loan, such as life insurance or disability insurance. These services usually do not protect the borrower against any risk relating to the loan. Other abuses include unfair balloon payments, mandatory arbitration clauses, high interest rates, inflated home appraisals, and yield spread premiums. Anna Beth Ferguson, Predatory Lending: Practices, Remedies and Lack of Adequate Protection for Ohio Consumers (2000), 48 Clev.St.L.Rev. 607.

means, homeowners were charged exorbitant fees and interest rates and were unfairly persuaded to incur mortgage debt in excess of their needs or ability to pay.

{¶ 5} In response to AFSA's challenge, the trial court issued a decision granting partial summary judgment in favor of AFSA, on September 22, 2003, finding that the Cleveland predatory-lending ordinances were in conflict with the state statutes dealing with predatory lending. The court held that the Cleveland ordinances were police regulations and not purely matters of local self-government, that the state statutes were general laws, and that the local ordinances and state law conflicted. The court held the Cleveland ordinances invalid under Ohio's Home Rule Amendment.

{¶ 6} The court, however, did find that portions of the predatory-lending legislation were valid, including Cleveland Codified Ordinances ("C.C.O.") Sections 659.99(C)(1) and (2), 178.181, and 178.07, subject to the redaction of subpart (i) in 178.07(E)(2), dealing with city business. These sections outlined the city's resolve not to do business with predatory lenders. The court followed its decision with a journal entry that granted AFSA's motion for summary judgment and dismissed the action.

### The State Statutes

{¶ 7} The Ohio Revised Code contains a number of provisions that govern lending and related matters.[2] In 2002, the state government enacted a further series of laws outlining standards for money lending and consumer transactions in Ohio through Sub.H.B. No. 386. These laws, dealing with predatory lending in Ohio, are codified at R.C. 1349.25 through 1349.37.

{¶ 8} The state defines "predatory loans" as loans that involve Ohio property and in which either (a) the annual interest rate at consummation exceeds the yield on comparable Treasury securities by eight percent for first mortgage loans or ten percent for second mortgage loans or (b) the total points or fees exceed the greater of eight percent of the loan amount or at least $400. R.C. 1349.25(D). These are deemed "covered loans."

{¶ 9} Although the state statutes impose restrictions and disclosure requirements on these covered loans and provide a rescission remedy and creditor

---

2. These sections include (1) the Banking Code (R.C. 1101.01 et seq.), (2) the Savings and Loan Code (R.C. 1151.01 et seq.), (3) the Savings Bank Code (R.C. 1161.01 et seq.), (4) the Small Loans Act (R.C. 1321.01 et seq.), (5) the Mortgage Loan Act (R.C. 1321.51 et seq.), (6) statutes regulating insurance premium finance companies (R.C. 1321.71 et seq.), (7) statutes regulating mortgage brokers (R.C. 1322.01 et seq.), (8) statutes regulating loans by check-cashing businesses (R.C. 1315.35 et seq.), (9) statutes regulating credit service organizations (R.C. 4712.01 et seq.), (10) the Retail Installment Sales Act (R.C. 1317.01 et seq.), and (11) usury laws (R.C. 1343.01 and R.C. 1343.011).

penalties, they do not impose mandatory counseling for the borrower as a prerequisite to issuing the loan. R.C. 1349.26, 1349.27, 1349.29, and 1349.34. The state statutes also generally permit lenders to make payments directly to home-improvement contractors, while imposing some conditions, but not absolutely precluding such payments, in covered loan transactions. R.C. 1349.27(E). Although requiring certain disclosures, the state statutes do not require lenders to give a specific predatory-loan disclosure form to a borrower three days prior to closing on any home-improvement loan. R.C. 1349.26. Also, the state statutes do not require a "certification of compliance" detailing factual information about a covered loan when recording a mortgage.

{¶ 10} Lastly, R.C. 1.63 states that "[t]he state solely shall regulate the business of originating, granting, servicing, and collecting loans" and preempts municipal ordinances attempting to regulate the business.

### The Cleveland Ordinances

{¶ 11} AFSA's complaint arose from the city's enactment of a series of predatory-lending laws. The ordinances at issue in this lawsuit are Nos. 737–02 and 45–03, as well as Sections 659.01 through 659.04, 659.99, 178.01, 178.07, and 178.181 of the Codified Ordinances of the City of Cleveland.

{¶ 12} "Predatory loan" in Cleveland is defined as any residential loan bearing interest at an annual rate that exceeds the yield on comparable Treasury securities by either four and one-half to eight percentage points for first mortgage loans or six and one-half to ten percentage points for junior mortgages. C.C.O. Sections 659.01 and 659.02. In addition, loans are considered predatory if they were made under circumstances involving the following practices or include the following terms: loan flipping, balloon payments, negative amortization, points and fees in excess of four percent of the loan amount or in excess of $800 on loans below $16,000, an increased interest rate on default, advance payments, mandatory arbitration, prepayment penalties, financing of credit insurance, lending without home counseling, lending without due regard to repayment, or certain payments to home-improvement contractors under certain circumstances. C.C.O. Sections 659.01 and 659.02.

{¶ 13} The city also requires a certification of compliance to be recorded in the Cuyahoga County Recorder's Office and charges the director of consumer affairs with enforcement of the ordinances. C.C.O. Sections 659.04 and 659.05. A violation of a prohibited act under the ordinances constitutes a misdemeanor of the first degree, while a violation of a disclosure or recording requirement is a misdemeanor of the fourth degree. Section 659.99(a) and (b). The ordinances further provide that the city will not do business with predatory lenders. Section C.C.O. 659.99(C).

### The Alleged Conflicts

{¶ 14} AFSA identifies several conflicts between the state statutes and the city ordinances involving predatory lending.

{¶ 15} First, AFSA maintains that the city transcends the state limits on interest rates by regulating loans that are up to three and one-half percent below the threshold limit of eight percent on first mortgages and ten percent on junior mortgages. Second, the city ordinances apply to loans with points and fees in excess of four percent of the loan amount (or in excess of $800 for loans below $16,000), a standard that is set below the state threshold. Third, the city's ordinances require mandatory loan counseling for the borrower, whereas state law includes no such prerequisite. C.C.O. Sections 659.02(a)(2) and 659.99(a).

{¶ 16} Fourth, unlike state law, which only imposes certain conditions, the city prohibits any direct payments to home-improvement contractors of the proceeds of any residential loan meeting the city's definition of a predatory loan. R.C. 1349.27(E) and C.C.O. Section 659.02(a)(3). Fifth, the city requires that a specified loan-disclosure notice be given to borrowers three days prior to closing on any home-improvement loan made in Cleveland, including those defined as predatory loans under both the city ordinances and state law. C.C.O. Section 659.03(a). The state, although requiring certain disclosures on home improvement loans, does not require the notice required by the city ordinances. Further, under the city's ordinances, failure to comply subjects the lender to possible criminal penalties. C.C.O. Section 659.99(b).

{¶ 17} Sixth, the city requires the filing of a certification of compliance contemporaneously with the recording of a mortgage on what the state deems to be a covered loan. C.C.O. Section 659.04. In addition, the failure to record the certification of compliance subjects the lender to criminal penalties. C.C.O. Section 659.99(b).

{¶ 18} Lastly, AFSA relies on state law providing, "The state solely shall regulate the business of originating, granting, servicing, and collecting loans." R.C. 1.63(A). In addition, AFSA points out that R.C. 1.63(A) states that "this regulation shall be in lieu of all other regulation of such activities by any municipal corporation or political subdivision."

### Standard of Review

{¶ 19} This court reviews a trial court's grant of summary judgment de novo. *Ekstrom v. Cuyahoga Cty. Community College*, 150 Ohio App.3d 169, 2002-Ohio-6228, 779 N.E.2d 1067. Before summary judgment may be granted, a court must determine that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one

conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." *State ex rel. Dussell v. Lakewood Police Dept.*, 99 Ohio St.3d 299, 300–301, 2003-Ohio-3652, 791 N.E.2d 456, citing *State ex rel. Duganitz v. Ohio Adult Parole Auth.* (1996), 77 Ohio St.3d 190, 191, 672 N.E.2d 654.

### Home Rule Amendment

{¶ 20} Ohio's Home Rule Amendment includes Section 3, Article XVIII of the Ohio Constitution, which states:

Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such police, sanitary and other regulations, as are not in conflict with general laws.

{¶ 21} The authority conferred on municipalities by this section "is limited only by general laws in conflict therewith upon the same subject matter." *Fondessy Enter., Inc. v. Oregon* (1986), 23 Ohio St.3d 213, 23 OBR 372, 492 N.E.2d 797, paragraph one of the syllabus. The Supreme Court of Ohio has established a three-part test to determine whether a municipal ordinance must yield to a state statute. *Ohio Assn. of Private Detective Agencies, Inc. v. N. Olmsted* (1992), 65 Ohio St.3d 242, 244–245, 602 N.E.2d 1147. Under this test, a municipal ordinance is preempted by state law when (1) the challenged ordinance involves the exercise of police power rather than local self-government, (2) the statute is a general law, and (3) a conflict exists between the ordinance and state law. Id.; *Asish Enterprises v. Fairview Park* (Jan. 13, 2000), Cuyahoga App. No. 75088, 2000 WL 23153.

{¶ 22} The city does not contest the trial court's finding that the ordinances at issue, with the exception of C.C.O. Sections 569.99(C), 178.181 and 178.07, are police regulations. However, the city takes exception to the trial court's finding that C.C.O. Section 659.01 is a police regulation because it claims that this definitional section is necessary to the meaning of the sections the trial court upheld. Consideration of C.C.O. Section 659.01 is unnecessary as a result of our conflict analysis below.

{¶ 23} The city does not contest the trial court's finding that the state statutes governing covered loans are general laws. However, this court does take issue with R.C. 1.63, as discussed below.

### Conflict Analysis

{¶ 24} The test to determine whether a conflict exists between a municipal ordinance and a state's general law is "whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa." *Sheffield v. Rowland* (1999), 87 Ohio St.3d 9, 11, 716 N.E.2d 1121, quoting *Struthers v.*

*Sokol* (1923), 108 Ohio St. 263, 140 N.E. 519, paragraph two of the syllabus. When there is a direct conflict, the state regulation prevails. Id. The issue presents a question of law, which this court reviews de novo. *Independence Excavating, Inc. v. Twinsburg,* Summit App. No. 20942, 2002-Ohio-4526, 2002 WL 2009464.

{¶ 25} The trial court found that the city ordinances were in conflict with state law because (1) the city ordinances regulate loans with interest rates below the state's eight percent threshold, (2) the city ordinances require a borrower to receive prior loan counseling and the state law does not, and (3) the city ordinances require certain disclosures in connection with making a home-improvement loan and subject creditors to criminal penalties for failing to do so, thereby requiring more of lenders than the statute does.

{¶ 26} The city argues that the trial court's finding was wrong. The city claims that there is no conflict unless the ordinances prohibit that which the statutes permit or permit that which the statutes prohibit. Here the state statutes prohibit the making of predatory loans above a certain threshold rate. The city ordinances do not permit what the state statutes prohibit, but rather, they impose a lower threshold with stricter standards. Thus, the city asserts that because both laws are prohibitory they cannot conflict with one another.

{¶ 27} AFSA contends that the two laws are in direct conflict because the ordinances require more of lenders in Cleveland than the state statutes do. AFSA further argues that there is a state prohibition against municipal lending regulation and the city ordinances are a direct affront to this prohibition.

{¶ 28} Insofar as AFSA claims that R.C. 1.63 imposes a prohibition on municipal lending regulation, AFSA may not rely on that statutory construction because a complete preemption by the legislature would be unconstitutional. See *Mentor Green Mobile Estates v. Mentor* (Aug. 23, 1991), Lake App. No. 90–L–15–135, 1991 WL 163450. Indeed, the power of home rule, which is expressly conferred upon municipalities, may not be withdrawn by the General Assembly. *Fondessy Enterprises, Inc. v. Oregon* (1986), 23 Ohio St.3d 213, 214, 23 OBR 372, 492 N.E.2d 797, citing *Akron v. Scalera* (1939), 135 Ohio St. 65, 66, 13 O.O. 376, 19 N.E.2d 279. As stated by the Supreme Court of Ohio in *Fondessy:* "If the provisions of [a state statute] do preclude a home rule municipality, with police powers guaranteed it by the Ohio Constitution, from enacting any and all legislation related to the state statute, then that provision of state law must be ruled unconstitutional." 23 Ohio St.3d at 216, 23 OBR 372, 492 N.E.2d 797.

{¶ 29} We also find that R.C. 1.63 is not a general law. In *Canton v. State,* 95 Ohio St.3d 149, 153, 2002-Ohio-2005, 766 N.E.2d 963, the Supreme Court of Ohio set forth the following standard for evaluating whether a statute

constitutes a general law: "[T]o constitute a general law for purposes of home-rule analysis, a statute must (1) be part of a statewide and comprehensive legislative enactment, (2) apply to all parts of the state alike and operate uniformly throughout the state, (3) set forth police, sanitary, or similar regulations, rather than purport only to grant or limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations, and (4) prescribe a rule of conduct upon citizens generally."

{¶ 30} R.C. 1.63 provides the state with sole authority to regulate the business of originating, granting, servicing, and collecting loans and preempts municipal ordinances that attempt to regulate the business. R.C. 1.63 does not prescribe a rule of conduct upon citizens generally. Even if considered and read as part of a comprehensive legislative enactment, R.C. 1.63 applies only to legislative bodies, and not to citizens generally. Therefore, it is not a general law. See *Canton v. State*, 95 Ohio St.3d at 157, 2002-Ohio-2005, 766 N.E.2d 963. Since R.C. 1.63 is not a general law and the state's attempt to extinguish the legislative power of a municipal corporation under R.C. 1.63 is unconstitutional, we need not consider whether the city ordinances are in conflict therewith.

{¶ 31} We now turn our analysis to whether there is a conflict between the city predatory-ending ordinances and the state statutory provisions dealing with covered loans. The Supreme Court of Ohio has held that absent statutory language that limits local regulation, state rules providing minimum requirements do not conflict with local rules providing for stricter regulation. *Middleburg Hts. v. Ohio Bd. of Bldg. Stds.* (1992), 65 Ohio St.3d 510, 513–515, 605 N.E.2d 66; see, also, *Sullivan v. Hamilton Cty. Bd. of Health*, 155 Ohio App.3d 609, 2003-Ohio-6916, 802 N.E.2d 698, ¶ 31; *Sheffield v. Rowland* (1999), 87 Ohio St.3d 9, 12, 716 N.E.2d 1121. Further, a city is permitted to adopt greater protections, requirements, or standards than those of the state, provided no conflict is presented. *Das v. Ohio State Univ.* (2000), 115 F.Supp.2d 885, 892; *Mentor Green Mobile Estates v. Mentor* (Aug. 23, 1991), Lake App. No. 90–L–15–135, 1991 WL 163450; see, also, *Fondessy*, 23 Ohio St.3d 213, 23 OBR 372, 492 N.E.2d 797.

{¶ 32} Here, the city ordinances do not permit what state statutes expressly prohibit or vice versa. The state statutes set a minimum requirement and do not expressly permit or prohibit loans made at a lower threshold. They also do not expressly limit any of the additional requirements imposed by the city. With respect to the conflicts alleged by AFSA outlined above, the state statutes are silent on the issues.

{¶ 33} Nevertheless, AFSA maintains that the state statutes implicitly authorize conduct that the city ordinances prohibit. There is no constitutional basis for applying implied preemption. See *Cincinnati Bell Tel. Co. v. Cincinnati* (1998),

81 Ohio St.3d 599, 693 N.E.2d 212. Further, courts must be sensitive to the home-rule authority of municipalities because a disregard of that authority would be an effective nullification of the constitutional right.

{¶ 34} The Home Rule Amendment was adopted in 1912. Before that time, municipalities could exercise only those powers delegated by statute. In early decisions concerning the amendment, it was expressed that "[t]he bottom [line] of the 'Municipal Home Rule' amendment was to emancipate, to free, the cities and villages of Ohio from interference, exploitation and ripper legislation by the general assembly of Ohio, and to leave the matter of the government of the cities to the people of the cities." *State ex rel. Doerfler v. Otis* (1918), 98 Ohio St. 83, 98, 120 N.E. 313, Wanamaker, J., dissenting. It was also stated that "[t]he object of the home-rule amendment was to permit municipalities to use this intimate knowledge and determine for themselves in the exercise of all the powers of local self-government how these and similar local affairs should be conducted." *Froelich v. Cleveland* (1919), 99 Ohio St. 376, 124 N.E. 212. Later decisions have also recognized that "[t]he purpose of the Home Rule amendments was to put the conduct of municipal affairs in the hands of those who knew the needs of the community best, to-wit, the people of the city." *N. Ohio Patrolmen's Benevolent Assn. v. Parma* (1980), 61 Ohio St.2d 375, 379, 15 O.O.3d 450, 402 N.E.2d 519, fn. 1.

{¶ 35} Courts must be mindful of these principles when conducting a home-rule conflict analysis, and " 'when it is possible * * * to harmonize the general law and municipal ordinances, the same should be done.' " Id. at 377, 15 O.O.3d 450, 402 N.E.2d 519, quoting *Coshocton v. Saba* (1936), 55 Ohio App. 40, 43, 8 O.O. 345, 8 N.E.2d 572. Clearly, home rule establishes that a "one size fits all" solution by statewide legislative enactment is not always in the best interests of the people. As Justice Ralph Locher stated in his concurring opinion in *Fondessy:*

It is my view that the adoption of home rule in Ohio was as important a step in government to this state as the federal Constitution was to the United States as a whole. To disenfranchise communities in the name of expediency and to relegate home rule to the dust bins of benign neglect cannot be countenanced by this court. Today's decision should serve to revivify our constitutional commitment to the people of this state to control their own destinies.

*Fondessy,* 23 Ohio St.3d at 220, 23 OBR 372, 492 N.E.2d 797, Locher, J., concurring.

{¶ 36} We continue our conflict analysis with these principles in mind. The Supreme Court of Ohio has stated that in order for a conflict to arise, " 'the [provision] must *positively permit* what the [other provision] prohibits.' (Empha-

sis added.)" *State ex rel. King v. Summit Cty. Council,* 99 Ohio St.3d 172, 2003-Ohio-3050, 789 N.E.2d 1108, ¶ 39, quoting *Cincinnati v. Hoffman* (1972), 31 Ohio St.2d 163, 169, 60 O.O.2d 117, 285 N.E.2d 714. The Supreme Court of Ohio has further stated, "A police ordinance is not in conflict with a general law upon the same subject merely because certain specific acts are declared unlawful by the ordinance, which acts are not referred to in the general law * * * or because different penalties are provided for the same acts, even though greater penalties are imposed by the municipal ordinance." *Struthers v. Sokol* (1923), 108 Ohio St. 263, 140 N.E. 519, paragraph three of the syllabus.

{¶ 37} Upon our review of the statutes and ordinances, we find no conflict. The ordinances do not permit what the statutes forbid or vice versa. The city's enactment of these ordinances was a valid effort to regulate the growing problem of predatory lending within the city of Cleveland and to address local concerns and the needs of the local community. We find that the city's enactment of the ordinances with more stringent regulations was a proper exercise of its home-rule powers.[3]

Judgment reversed.

ANNE L. KILBANE, P.J.,* concurs.

ANN DYKE, J., concurs separately.

ANN DYKE, Judge, concurring.

{¶ 38} Although it conflicts with the judgment rendered in *Dayton v. State,* 157 Ohio App.3d 736, 2004-Ohio-3141, 813 N.E.2d 707, I concur in the judgment rendered this day. In my view, and indeed in the view of the lower court in *Dayton,* R.C. 1.63 is unconstitutional because it purports to completely bar home-rule municipalities from regulating the business of originating, granting, servicing, and collecting loans and other forms of credit. Moreover, R.C. 1.63 does not prescribe a rule of conduct upon citizens generally. Accordingly, I agree with the majority's determination that the city of Cleveland is not precluded from exercising its home-rule powers to regulate the consumer loans at issue.

---

3. We recognize that our decision is in conflict with *Dayton v. State,* 157 Ohio App.3d 736, 2004-Ohio-3141, 813 N.E.2d 707.

* Judge Anne L. Kilbane concurred in this journal entry and opinion prior to her death on November 23, 2004.

(The Ohio Constitution requires the concurrence of at least two judges when rendering a decision of a court of appeals. Therefore, this announcement of decision is in compliance with constitutional requirements. See *State v. Pembaur* (1982), 69 Ohio St.2d 110, 23 O.O.3d 159, 430 N.E.2d 1331.)