OPINION
Defendant-appellant John Ray Bretz appeals from the September 18, 1997, Journal Entry of the Holmes County Court of Common Pleas finding appellant incompetent to stand trial and not restorable to competency, the trial Court's November 18, 1997, Journal Entry denying appellant's Motion to Dismiss proceedings under R.C. 2945.39(A)(2) et. seq., and the trial Court's November 19, 1997, Judgment Entry. Defendant-appellant also appeals the trial court's December 12, 1997, Judgment Entry committing defendant-appellant to Massillon Psychiatric Center and retaining jurisdiction over the commitment for the remainder of defendant-appellant's life. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On July 15, 1996, the Holmes County Grand Jury secretly indicted appellant on one count of attempted rape in violation of R.C. 2923.02(A), an aggravated felony of the second degree, three counts of felonious sexual penetration in violation of either R.C. 2907.12(A)(1)(b) or 2907.12(B), aggravated felonies of the first degree, and two counts of gross sexual imposition in violation R.C. 2907.05(A)(4), felonies of the third degree. The three victims were all under the age of thirteen. On July 22, 1996, the day of appellant's arraignment, appellant's counsel filed a "Motion Raising Issue of Competency to Stand Trial" pursuant to R.C.2945.37 et. seq. and appellant filed written pleas of not guilty and not guilty by reason of insanity pursuant to Criminal Rule 11, which were accepted by the court. Pursuant to a Journal Entry filed on July 25, 1996, appellant was then referred to the District V Forensic Diagnostic Center for a competency and sanity evaluation and report. A copy of appellant's psychological evaluation was received by the trial court on August 26, 1996. Thereafter, a competency hearing was held before the trial court on September 3, 1996. At the hearing, the parties stipulated to the admissibility of appellant's psychological evaluation. Pursuant to a Judgment Entry filed on September 5, 1996, the trial court determined that, pursuant to appellant's psychological report, appellant was not competent to stand trial but that there was a substantial probability that appellant would become competent within one year. For such reason, appellant, pursuant to R.C. 2945.38(D), was committed to the Massillon State Hospital for the maximum period then in effect, which was fifteen months, for restoration to competency. After receiving a report in July of 1997 from the Massillon Psychiatric Center opining that appellant was not competent to stand trial and was not restorable to competency, the trial court scheduled a hearing for August 8, 1997, pursuant to R.C. 2945.38 to determine how to proceed. The trial court, in its July 16, 1997, entry setting the hearing, asked counsel to "brief the Court's alternatives." Appellee, on August 7, 1997, filed a memorandum on the Court's alternatives under R.C. 2945.38. The next day, a memorandum was filed by appellant. After reviewing the positions of counsel at the hearing on August 8, 1997, the trial court scheduled a hearing for September 10, 1997, to determine whether appellant was competent to stand trial. After the trial court found that appellant was incompetent to stand trial, appellee filed a "Motion to Return Jurisdiction" on September 11, 1997, requesting that the trial court conduct a hearing pursuant to R.C. 2945.39(A)(2) to determine whether the Court should retain jurisdiction over appellant. Pursuant to a Journal Entry filed on September 18, 1997, the trial court found that, based upon the evidence presented at the September 10, 1997, hearing, appellant was not competent to stand trial and was not restorable to competency, and that appellant represented a danger to himself and others. A hearing on appellee's Motion to Retain Jurisdiction was scheduled for September 22, 1997, to determine whether appellant committed the offenses for which he was charged and if appellant was mentally ill and subject to hospitalization by court order. A Motion to Dismiss the Proceedings under R.C. 2945.39(A)(2) et seq. was filed by appellant on September 22, 1997. Appellant, in his motion, argued that: (1) R.C. 2945.39(A)(2) only applied to offenses committed after July 1, 1996, the effective date of S.B. 2 and (2) R.C.2945.39(A)(2) is unconstitutional under the Ohio and United States Constitutions as violative of due process and equal protection of law. Prior to the hearing on September 22, 1997, the trial court had granted appellee fourteen days to respond to appellant's Motion to Dismiss. The following evidence was adduced at the hearing pursuant to R.C.2945.39(A)(2) that commenced on September 22, 1997, and was continued until September 24, 1997. At the September 22, 1997, hearing, counsel stipulated to the admission of the evidence produced at the September 10, 1997, competency hearing. Counts I (Attempted Rape) and II (Felonious Sexual Penetration) and III (Gross Sexual Imposition) of the indictment all involve the same victim, J. S., who was born on October 21, 1985. When J.S. was in third grade, he lived in a house in Holmes County with his mother. Since Larry Bretz, appellant's brother, owned the house in which J.S. resided, both appellant and Larry Bretz also lived in the house. J.S. testified that in the late fall of his third grade year when he was eight years old, appellant "said if I would jack him off he would pay him money." Transcript of Proceedings at 73. At the time, J.S.'s parents were at the grocery store. J.S. further testified that while he was in appellant's bedroom, he massaged appellant's penis with his hand for five to fifteen minutes until appellant ejaculated. Appellant did not pay J.S. any money at the time. About the same time of year, J.S. was in appellant's bedroom. After taking J.S.'s clothes off, appellant, who was on top of J.S., "tried to put his penis in my butt." Transcript Proceedings at 74-75. J.S. was laying on his stomach on a bed at the time. While appellant did not penetrate J.S.'s anus, appellant's penis did touch and rub against appellant's buttocks. After approximately five to fifteen minutes, appellant ejaculated on J.S.'s buttocks. J.S. also testified about a third sexual incident involving appellant, relevant to Count II of the indictment (Felonious Sexual Penetration), that occurred during the fall of J.S.'s third grade year. According to J.S., appellant pulled down J.S.'s pants and inserted his finger into J.S.'s anus. When asked why he did not tell anyone of this third incident, J.S. testified that appellant threatened to kill him if he did. Appellant, however, did not threaten appellant after the first two incidents. J.S. further testified that he was afraid of appellant. Approximately two months later, J.S. told his aunt of the incidents involving appellant. J.S. also talked to a man at Children's Services and to nurses of Akron Children's Hospital, where he was examined. When asked whether appellant "ever talk[ed] to you about doing these things with other children," J.S. testified that appellant "had talked a couple of times about the neighbor girl." Transcript of Proceedings at 79. J.S. further testified that appellant "said he had had sex" with A. R., the neighbor girl. Id. A. R. is the victim with respect to counts V (Felonious Sexual Penetration) and VI (Felonious Sexual Penetration) of the indictment in this matter. Both counts alleged that appellant had compelled the victim to submit by force or threat of force. At the hearing that commenced on September 22, 1997, A. R., who was born on July 20, 1985, testified that the summer before she started first grade, when she was six years old, she was at appellant's house with her grandmother. Appellant was A.R.'s neighbor. A. R. testified that while she was sleeping, appellant had taken off her pants and underwear and while sitting on her back to hold her down, "had his fingers in my privates when I woke up." Transcript of Proceedings at 53. When A.R. woke up, she "told him [appellant] that I didn't like this and he told me that it was a game." Transcript of Proceedings at 54. Appellant, A.R. testified, threatened to hurt her and torture her if she told anyone of the incident and if he didn't let him do what he was doing. A.R. also testified regarding a second incident that occurred the summer before she started first grade when she was upstairs at appellant's house. Appellant, A.R. testified, took her pants and underwear off and put his finger inside her anus, and then threatened to kill her or torture her if she told anyone. A.R., who said he was afraid of appellant, testified that appellant held her hands down while molesting her. After A.R. told a teacher of the incidents involving appellant, A.R. was examined at Akron Children's Hospital and also spoke to a man at Children's Services. Both J.S.'s and A.R.'s testimony was corroborated by Donna Abbott, a pediatric nurse practitioner at Children's Hospital, who was involved in the examination of A.R. in January, 1993, and J.S. in February of 1995. Appellant's final victim, R.C., Jr., testified concerning the events surrounding the gross sexual imposition alleged in count IV of the indictment. R.C., Jr., who was born on May 22, 1983, testified that in late October or November of 1994 when he was in sixth grade for the first time, he went over to the house in which appellant was living at approximately 7:00 P.M. Appellant was living with Larry Bretz, R.C.'s uncle. Appellant, R.C., Jr. testified, offered to pay R.C., Jr. $4.00 if he played with appellant's "dick". Transcript of Proceedings at 38. R.C., Jr. testified that "played with his [appellant's] penis" and then whenever it went through my head "this is sick, that's when I went outside." Transcript of Proceedings at 39. The whole incident lasted three to four minutes. R.C., Jr. later told his parents and two sisters of the incident. R.C., Jr. also talked to a man from Children's Services. All three victims identified appellant as their molester. Appellant, who weighs approximately 180 pounds, is 6'2" in height. At the conclusion of the trial, the court took the matter under advisement. Both parties then filed post trial briefs. On October 14, 1997, appellee filed a Memorandum in opposition to appellant's Motion to Dismiss. Pursuant to a Journal Entry filed November 18, 1997, the trial court denied appellant's Motion to Dismiss. The next day, pursuant to a Judgment Entry filed on November 19, 1997, the trial court found, by clear and convincing evidence that appellant had committed one count of attempted rape, two counts of gross sexual imposition and three counts of felonious sexual penetration. With respect to one count of felonious sexual penetration involving [A.R.], the court further found that appellant "did purposely compel [A. R.] to submit by use of actual force and by threat of force. If convicted of this offense Defendant would be imprisoned for life. R.C. 2907.12(B)." The court, in its November 19, 1997 Judgment Entry, further held as follows: "Pursuant to the evidence produced at the September 10, 1997, hearing defendant is mentally ill and subject to hospitalization by court order. R.C. 5122.01(B). Defendant suffers from mental illness as defined in R.C. 5122.01(A): schizophrenia with prior history of alcohol and cannabis abuse. Specifically, the Court finds that Defendant represents substantial risk of physical harm to others as manifested by evidence of present dangerousness. Defendant is a repeated sexual abuser of children and uses threats of violence to avoid detection. R.C. 5122.01(B)(2). The Court further finds, based upon the same evidence that Defendant would benefit from treatment in a hospital for his mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others. R.C. 5122.01(B)(4)."
The Court thus retained jurisdiction over appellant. Thereafter, a dispositional hearing was held on December 11, 1997. Prior to the hearing, both parties had filed briefs regarding disposition. Pursuant to a Judgment Entry filed the day after the hearing, the trial court ordered that appellant be committed to the Massillon Psychiatric Center "until further order of this court" and that the court's jurisdiction over appellant's commitment under R.C.2945.401(J)(1) "shall continue until the end of the defendant's life" since the maximum prison term appellant could have received for felonious sexual penetration by force or threat of force in violation of R.C. 2907.12(A)(1)(b) was life in prison. It is from the trial court's November 18, 1997, November 19, 1997, and December 12, 1997, Judgment Entries that appellant prosecutes his appeal, raising the following assignments of error:
ASSIGNMENT OF ERROR NO. I
 THE TRIAL COURT ERRED IN ITS JOURNAL ENTRY OF NOVEMBER 18, 1997, IN DENYING APPELLANT'S MOTION OF SEPTEMBER 22, 1997, TO DISMISS THE PROCEEDINGS UNDER ORC 2945 BASED UPON THE EFFECTIVE DATE OF THE STATUTE.
ASSIGNMENT OF ERROR NO. II
 THE TRIAL COURT ERRED IN ITS JOURNAL ENTRY OF NOVEMBER 18, 1997, IN FINDING THAT ORC 2945 ET SEQ. IS CONSTITUTIONAL.
ASSIGNMENT OF ERROR NO. III
 THE TRIAL COURT ERRED IN ITS JUDGMENT ENTRY OF NOVEMBER 19, 1997, WHEN IT FOUND BY CLEAR AND CONVINCING EVIDENCE THAT APPELLANT COMMITTED CERTAIN CRIMINAL ACTS AND SPECIFICATIONS THEREIN; THAT THE APPELLANT WAS MENTALLY ILL AND SUBJECT TO HOSPITALIZATION.
ASSIGNMENT OF ERROR NO. IV
 THE TRIAL COURT ERRED IN ITS JUDGMENT ENTRY OF SENTENCING OF DECEMBER 12, 1997, WHEN IT COMMITTED APPELLANT TO THE MASSILLON PSYCHIATRIC CENTER AND RETAINED JURISDICTION OVER APPELLANT'S COMMITMENT FOR THE REMAINDER OF APPELLANT'S LIFE.
ASSIGNMENT OF ERROR NO. V
 THE TRIAL COURT ERRED IN SENTENCING APPELLANT SUCH AS TO DENY HIM THE BENEFITS OF S.B. 2.
 I
Appellant, in his first assignment of error, maintains that the trial court erred in overruling appellant's September 22, 1997, Motion to Dismiss the proceedings under R.C. 2945. Appellant specifically contends that R.C. 2945.39(A)(2), which was enacted as part of S.B. 285, applies only if the criminal offense which brought the defendant to the attention of the trial court was committed after S.B. 285's July 1, 1997, effective date. Therefore, appellant argues, S B. 285 should not have been applied to him as his offenses were committed prior to July 1, 1997. Pursuant to R.C. 1.48, statutes are presumed to apply only prospectively unless they are specifically made retroactive. "The issue of whether a statute may constitutionally be applied retrospectively does not arise unless there has been a prior determination that the General Assembly specified that the statute so apply." Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, paragraph one of the syllabus. Only after such a prior determination is the issue of whether a statute is unconstitutionally retroactive in violation of section 28, Article II of the Ohio Constitution addressed. Id. An "[a]nalysis of whether a statute is unconstitutionally retroactive in violation of Section 28, Article II . . . requires an initial determination of whether the statute is substantive or merely remedial." Id at paragraph three of the syllabus. S.B. 285 contains no provisions for retroactive application. In other words, the General Assembly did not specify that the provisions of S.B. 285 were to be applied retroactively. Therefore, we never get to the second part of the analysis, which is whether the statute is unconstitutionally retroactive, because the statute is not retroactive at all. We find, however, that the provisions of S.B. 285 that are relevant to the case sub judice were not applied retroactively by the trial court to the appellant's criminal offense, but were applied prospectively to commitment proceedings taking place after July 1, 1997. Prior to S.B. 285, the only commitment procedure available regarding a criminal defendant found incompetent to stand trial (and remaining incompetent after the relatively short statutory time allotted for treatment to try to obtain the defendant's return to competency) was a civil commitment through the probate court. Under S.B. 285, the prosecuting attorney can now choose under certain circumstances, to file an affidavit in probate court for civil commitment of the defendant or to file a motion for the criminal court to retain jurisdiction if the criminal court finds by clear and convincing evidence that the defendant committed the offense(s) charged and that the defendant is a mentally ill person subject to court order. R.C. 2945.39(A) In the case sub judice, commitment proceedings were not begun until after the July 1, 1997, effective date of S.B. 285. The trial court did not receive a report from Massillon Psychiatric Center until July of 1997 indicating appellant was not competent to stand trial and was not restorable to competency. Thereafter, commitment proceedings began. Our colleagues in Ohio's Ninth District Court of Appeals found that another portion of S.B. 285 was applicable to a request for the continued commitment of a defendant who had been found not guilty by reason of insanity in February, 1977, and was committed originally under former R.C. 2945.39 "until . . . restored to reason." State v. Hawkins (Sept. 23, 1998), Summit App. No. 18765, unreported, affirmed (1999), 87 Ohio St.3d 311. S.B. 285, now provides that a defendant cannot be committed, under the jurisdiction of the criminal court, past the expiration of the maximum prison term that the defendant could have received if convicted. R.C. 2945.401 The Hawkins court found that S.B. 285 is prospective in its application when it applies to post-adjudication commitment hearings after its effective date of July 1, 1997, even though the defendant was found not guilty by reason of insanity prior to July 1, 1997. The court in Hawkins, supra, cited State v. Jackson (1981),2 Ohio App.3d 11, in holding that provisions of S.B. 285 are prospective in nature. In Jackson, supra, the defendant was found not guilty by reason of insanity prior to April 30, 1980, the effective date of Am. Sub. S.B. No. 297. Under Am. Sub S.B. No. 297, a number of changes were made with respect to involuntary commitment proceedings regarding persons found not guilty by reason of insanity, including changing jurisdiction from the probate court for the county in which the defendant was committed to the trial court and giving the prosecutor standing at commitment hearings. The Jackson court, found the provisions of Am. Sub. S.B. No. 297 to be prospective in nature, holding that the provisions were "intended to govern treatment and discharge procedures after the laws effective date" and did not take away any vested rights or attach any new obligations. Jackson, supra. at 14 (Emphasis added). We concur with the apellate court's holding in Hawkins, supra, that: "S.B. 285, similarly, merely provides the procedural and jurisdictional bases upon which determinations of continued commitment are to be conducted after July 1, 1997. Its provisions do not change any determinations about guilt, innocence, or commitment made prior to July 1, 1997. Nor do they take away any vested rights, create any new obligations, impose any new duties, or attach any new disabilities with respect to the 1976 offense with which defendant was charged." Hawkins, supra at 3.
Since S.B. 285 is to be applied prospectively (because there is no legislative intent expressed otherwise) and since S.B. 285 was applied prospectively in the case sub judice to the commitment proceedings of the defendant, we find that the trial court did not error when it denied appellant's motion to dismiss the commitment proceedings brought under S.B. 285. Appellant's first assignment of error is overruled.
 II
Appellant, in his second assignment of error, challenges the trial court's holding in its November 18, 1997, Journal Entry that R.C. 2945 et seq. is constitutional. Appellant specifically submits that R.C. 2945.39(A)(2), the retention of jurisdiction provision of S.B. 285, is unconstitutional under the Ohio and United States Constitutions as violative of due process and equal protection. According to appellant, R.C. 2945.39(A)(2) violates the requirements of Jackson v. Indiana (1972), 406 U.S. 715 and is, therefore, unconstitutional. In Jackson, supra. the United States Supreme Court held that the indefinite commitment of a criminal defendant "solely" on account of his incompetency to stand trial was violative of the due process clause. According to the court, "[w]ithout a finding of dangerousness, one committed . . . can be held only for a `reasonable period of time' necessary to determine whether there is a substantial chance of his attaining the capacity to stand trial in the foreseeable future." Jackson at 733 (Emphasis added). In so holding, the United States Supreme Court stated that "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson,406 U.S. at 738. However, in the case sub judice, appellant was not committed solely because he is incompetent to stand trial. Rather, appellant was committed following a hearing before the trial court during which the State presented evidence of appellant's guilt. After the hearing, the trial court, pursuant to a Judgment Entry filed on November 19, 1997, found by clear and convincing evidence that appellant had committed specified offenses, that appellant was mentally ill and subject to hospitalization by court order, and that appellant posed a substantial threat of physical harm to others. In contrast, in Jackson, supra., there was no "affirmative proof" that the accused had committed criminal acts or was otherwise dangerous. See Footnote 12 of Jones v. United States (1983), 463 U.S. 354, 365. The right to due process provided for in the Ohio Constitution is the equivalent of the right to due process provided by theFourteenth Amendment to the United States Constitution. Envirosafe Serv. of Ohio, Inc. v. Oregon (1992), 80 Ohio App.3d 516. In evaluating due process claims, courts consider the private interest at stake, the government interest at issue, and the risk that the private interest will suffer an erroneous deprivation. Mathews v. Eldridge (1976),424 U.S. 319. There is no doubt that the private interest at stake in this matter, namely, appellant's liberty, is substantial. However, we find that the State has an even greater interest in detaining individuals who have committed criminal acts and whom, as appellant, pose a substantial risk of physical harm to others and are in need of psychological treatment. Given appellant's psychological evaluations as well as the trial court's finding, by clear and convincing evidence, that appellant had committed the charges alleged in the indictment and the trial court's finding that appellant represents a substantial risk of physical harm to others, we find that the possibility of an erroneous deprivation of appellant's liberty is slight. As the trial court noted in its November 18, 1997, Journal Entry: "The Ohio legislature has been faced with the problem of releasing a defendant until he is competent to stand trial, thus affording him the opportunity to commit other crimes, or allow the criminal court to retain jurisdiction and place the defendant in a secure mental facility until he is either competent to stand trial or the maximum time for which he could have been imprisoned has elapsed.
S.B. 285 strikes a constitutionally acceptable balance. A defendant is not convicted of a crime. However, the court is allowed to continue a defendant's treatment which does not constitutionally amount to punishment. The duration of the defendant's compelled hospitalization is limited by the maximum term of imprisonment for the crime for which he was charged. In addition, the statute required a finding that defendant poses a risk of harm to himself and others. This was a substantial defect in the Indiana statute under examination in the Jackson case."
Thus, we do not find that appellant's due process rights have been violated since the nature and duration of appellant's commitment bear a reasonable relation to the purpose for which he has been committed. Appellant further asserts that the trial court erred in finding R.C. 2945.39(A)(2) constitutional since such section violates his right to equal protection. The Equal Protection Clause of theFourteenth Amendment directs that "all persons similarly situated shall be treated alike." Assn. for Retarded Citizens of North Dakota v. Olson (D.N.D. 1982), 561 F. Supp. 473, 489. Generally, disparity in treatment between similarly situated persons is constitutional if it bears some fair relationship to a legitimate public purpose. Olson. However, when this difference in treatment infringes on a fundamental right, the court must determine whether the difference is specifically tailored to serve a compelling governmental interest. Id. We find, however, that R.C. 2945.39(A)(2) does not violate equal protection. As the trial court stated in is November 18, 1997, Journal Entry, "Defendant argues that since he may be involuntarily hospitalized for life in this case a commitment under S.B. 285 is tantamount to an indefinite commitment under the Jackson doctrine. Defendant's argument fails, as he may well be subject to hospitalization for life under civil commitment. Thus, Ohio is not denying appellant equal protection of the law by his hospitalization being retained under the jurisdiction of the criminal trial court." Moreover, we agree with the trial court that there is no "substantive" difference in civil proceedings for hospitalization of mentally ill persons by court order under R.C. 5122 and 5123 and appellant's criminal proceedings under R.C. 2945.39 et seq. We also find, that to the extent there are some differences between the civil and "criminal" commitment proceedings, they are justified. For the criminal court to maintain jurisdiction, that court must find there is clear and convincing evidence the defendant committed the offenses charged. Therefore, not only must the criminal court find that the defendant is a danger to himself and others, the criminal court must have pretty strong proof that the defendant has already committed a harmful act. Since the trial court did not err in finding R.C. 2945.39(A)(2) et. seq. constitutional, appellant's second assignment of error is denied.
 III
In his third assignment of error, appellant contends that the trial court erred in finding by clear and convincing evidence that appellant committed the criminal offenses for which he was indicted and that appellant was mentally ill and subject to hospitalization. Appellant specifically points to alleged inconsistencies in each victim's individual testimony. We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there was relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. V. Foley Construction (1978),54 Ohio St.2d 279. As appellee correctly notes, it is the trial court's finding that appellant committed the offense contained in count VI of the indictment (Felonious Sexual Penetration With Force) that provides the grounds for appellant's lifetime commitment to the Massillon Psychiatric Hospital under the S.B. 285 proceedings. For such reason, this court need not review the evidence as to the other counts contained in the indictment. Count VI of the indictment alleged that appellant, in the summer of 1991, "did, without privilege to do so, insert any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another who is not the spouse of the offender, when the other person is less than thirteen years of age. . . . to-wit Jane Doe, D.O.B. July 20, 1985, and the offender did purposely compel the victim to submit by force or threat of force, . . .". A. R., the "Jane Doe" mentioned in count VI, testified at the September 22, 1997, hearing that in the summer of 1991 prior to the start of first grade, appellant removed her pants and underwear and digitally penetrated her anus. Appellant, A.R. testified, "told me that if I would tell that he would again hurt me or kill me and torture me in any way." Transcript of Proceedings at 56. While penetrating A.R.'s anus, appellant held her hands down while she was on her stomach. Donna Abbott, a pediatric nurse-practitioner who had interviewed and examined A.R. in January of 1993, testified that her physical findings were consistent with A.R.'s account of the incident. At the time of the incident, appellant was 6'2" tall, weighed 180 pounds and was thirty nine years old. Appellant contends that A.R.'s testimony should be disregarded as unreliable since: (1) she testified at the bench trial regarding incidents that occurred six or seven years ago when A.R. was five or six; (2) A.R., at one point during a January 11, 1993, examination at Akron's Children's Hospital, told Donna Abbott that appellant had molested her seven times in one day and (3) A.R., during such examination, never told Donna Abbott that appellant had threatened her. Appellant also points to alleged inconsistencies in A.R.'s testimony and questions whether force was involved. However, the trial court had the opportunity to hear A.R.'s testimony as a witness and to assess her credibility. The trial court clearly found A.R. a credible witness. That force was involved is evidenced by A.R.'s testimony that appellant held her hands down while digitally penetrating her as she lay on her stomach. Moreover, the element of force also can be established provided it can be shown that the victim's will was overcome by fear or duress. State v. Eskridge (1988), 38 Ohio St.3d 56,58-59. During the proceedings in this case, A.R. testified that during a prior incident during the same summer, appellant "told me that if I tell he would do something to hurt me and he would torture me in a lot of ways, that he would kill me, and if I didn't let him do what he was doing that he would kill me and torture me." Transcript of Proceedings at 54. Based on appellant's prior threats, the trial court could have found by clear and convincing evidence that appellant committed felonious sexual penetration with force with respect to Count VI of the indictment since appellant threatened A.R. with harm or death prior to the incident alleged in Count VI. Moreover, A.R.'s testimony was not only corroborated by Donna Abbott, the pediatric nurse practitioner, but also by J.S.'s testimony that appellant told him [J.S.] that he had engaged in sexual conduct with A.R. Based on the foregoing, we find that there was competent, credible evidence supporting the trial court's finding pursuant to R.C. 2945.34(A)(2) that there was clear and convincing evidence appellant committed the offense of felonious sexual penetration with force as alleged in count VI of the indictment. Appellant's third assignment of error is overruled.
 IV
Appellant, in his fourth assignment of error, contends that the trial court erred in committing appellant to the Massillon Psychiatric Center and retaining jurisdiction over appellant's commitment for the remainder of appellant's life. We disagree. Pursuant to an order filed on November 19, 1997, the trial court retained jurisdiction over appellant after a hearing pursuant to R.C. 2945.39(A)(2). Following the hearing, the court found, by clear and convincing evidence, that appellant had committed the offenses with which he was indicted and, in addition, that appellant was a mentally ill person subject to hospitalization by court order. Thereafter, a dispositional hearing was held on December 11, 1997. Pursuant to a Judgment Entry filed the next day, the trial court held as follows in ordering that appellant be committed to the Massillon Psychiatric Center "until further order of this court" and that the court's jurisdiction over appellant's commitment would continue until the end of appellant's life: "Once such commitment is made R.C.2945.401(A) states that defendant" . . . shall remain subject to the jurisdiction of the trial court pursuant to that commitment, under the provision of this section, until the final termination of the commitment as described in division (J)(1) of this section."
R.C. 2945.401(J)(1) restates that the defendant ". . . continues to be under the jurisdiction of the trial court until final termination of the commitment."
"Final termination" is defined in R.C. 2945.401(J)(1) as occurring upon the earlier of one of the following:
 (a) the defendant or person no longer is a mentally-ill person subject to hospitalization by court order or a mentally-retarded person subject to institutionalization by court order; as determined by the trial court; (b) the expiration of the maximum prison term or term of imprisonment that the defendant or person could have received if the defendant or person had been convicted of the most serious offense with which the defendant or person is charged or in relation to which the defendant or person was found not guilty by reason of insanity. (c) the trial court enters an order terminating the commitment under circumstances described in division (J)(2)(a)(ii) of this section.
R.C. 2945.401(J)(1)(b) states that the trial court's jurisdiction and the potential term of defendant's commitment does not expire until the expiration of the maximum prison term that he could have received if he would have been convicted of the most serious offense with which he was charged. In this case the defendant was charged and found to have committed in Count VI of the indictment: Felonious Sexual Penetration by force or threat of force in violation of R.C. 2907.12(A)(1)(b), an aggravated felony of the first degree, which carries a sentence of life imprisonment pursuant to R.C. 2907.12(B). This offense occurred on or between October and November, 1994, which makes it a pre-S.B. 2 case.
Therefore, the court concludes that the maximum extent of this Court's jurisdiction and the maximum extent of the defendant's commitment is life.
We agree with the trial court that R.C. 2945.401 makes no reference to any other sections of the Revised Code to determine the maximum form of commitment." Since appellant was committed in accordance with R.C. 2945.401, appellant's fourth assignment of error is overruled.
 V
Appellant, in his fifth and final assignment of error, argues that the trial court erred in sentencing appellant "such as to deny him the benefits of S.B. 2". As is stated above, the trial court found that the offense of felonious sexual penetration as set forth in count VI of the indictment was a pre-S.B. 2 offense since it occurred prior to July 1, 1996, the effective date of S.B. 2. However, the indictment in this matter was not filed until July 15, 1996, after S.B. 2's effective date. Appellant specifically maintains that he should have been given the benefit of S.B. 2's amended sentencing provisions since S.B. 2 was in effect when the indictment in this matter was filed. We, however, do not agree. The Ohio Supreme Court, in State v. Rush, specifically held that the amended sentencing provisions of S.B. 2 are inapplicable with regard to those defendants who committed crimes prior to, but were convicted after, its July 1, 1996, effective date. State v. Rush (1998), 83 Ohio St.3d 53. The sentencing provisions of S.B. 2 apply only to those crimes or after July 1, 1996. Id. Appellant, therefore, was not entitled to the benefits of S.B. 2's amended sentencing provisions since his crimes were committed prior to July 1, 1996. Therefore, under pre-S.B. 2 sentencing laws, the defendant would be subject to imprisonment for life if he were ever to be convicted of the charge of felonious sexual penetration and the offense involved force or threat of force and the victim was under thirteen years of age. As stated previously in this opinion, a commitment by the criminal court under S.B. 285 continues until final termination of the commitment. Final termination occurs upon the earlier of one of the following: 1) the court determines defendant is no longer a mentally ill person subject to hospitalization; 2) the expiration of the maximum prison term that defendant could have received if convicted of the most serious charge; 3) proceedings begin because the defendant has been restored to competency. In the case sub judice, the maximum prison term that defendant could receive if convicted is life in prison. Therefore, the trial court was correct in determining that, unless the defendant is found competent or no longer subject to psychiatric hospitalization, the trial court can maintain jurisdiction over defendant's commitment for life. Appellant's fifth assignment of error is overruled.
The Judgment of the Holmes County Court of Common Pleas is affirmed.
By EDWARDS, J. GWIN, P.J. and FARMER, J. concurs.