**Rini DAS, Plaintiff,**

v.

**The OHIO STATE UNIVERSITY, Defendant.**

**No. C2–98–0045.**

United States District Court, S.D. Ohio, Eastern Division.

Oct. 4, 2000.

Elliot Tod Fishman, Fishman & Fey, Columbus, OH, for Plaintiff.

Keith W. Schneider, Columbus, OH, for Defendant.

### *OPINION AND ORDER*

MARBLEY, District Judge.

## I. INTRODUCTION

This matter is before the Court on the Defendant's Motion for Summary Judgment filed on August 4, 2000. The Plaintiff, Rini Das, alleges that the Defendant, The Ohio State University, discriminated against her on the basis of her national origin in violation of Title VII, 42 U.S.C. § 2000e, 42 U.S.C. § 1983 and Ohio Revised Code Chapter 4112. The Plaintiff further claims that she was discriminated against on the basis of her sexual orienta-

tion in violation of Ohio public policy. For the following reasons, the Defendant's Motion for Summary Judgment is **GRANTED**.

## II. FACTS

### A. Defendant's Facts

The Plaintiff, Rini Das, was hired by the Ohio State University Hospitals ("Ohio State") in July of 1995. Ms. Das a native of India, is not a United States citizen and, in addition, is a gay woman. In August of 1995, Ms. Das began working for Ohio State after she obtained a proper work visa. She was hired as a Clinical Quality Engineer in the Department of Clinical Quality Management. At the time she was hired, Ms. Das had experience in quality assurance, two master's degrees and a partial Ph.D. Kelly Scheiderer, the Director of the Department during Ms. Das's employment, interviewed and recommended hiring Ms. Das. Ms. Scheiderer reported to Ms. Gail Marsh, the Administrator for the Hospital.

Upon hiring Ms. Das, Ms. Scheiderer immediately noticed that Ms. Das used informal language and slang words in her communications with other employees. For example, Ms. Das would use words such as "hey," "jive-on," and would, for example, in written communications spell "because" "becoz." Ms. Scheiderer verbally counseled Ms. Das about her communication style, but that did not result in a change. Ms. Scheiderer also noticed that Ms. Das did not record accurately the minutes of meetings. For example, Ms. Das would confuse "a" with the word "several." Ms. Scheiderer would have to rewrite and correct the minutes on a regular basis.

Ohio State used the Performance and Commitment to Excellence ("PACE") evaluation system during Ms. Das's employment with the University. On her PACE evaluation, Ms. Scheiderer criticized Ms. Das for improperly delegating responsibilities; for her poor performance on tasks that did not interest her; for her inability to bring about results in Committees, and for the tone and manner in which she communicated with other employees including her manner of criticizing and interrupting co-workers.

Based on all of these factors, Ms. Das was given a poor PACE rating by Ms. Scheiderer. Ms. Scheiderer asked Ms. Marsh to review Ms. Das's PACE, but, instead, Ms. Marsh sent the matter to Lydia Migitz, one of the Hospital's Human Resource Administrators. Ms. Migitz ultimately concluded that Ms. Das either should be terminated or resign. Following her resignation, Ms. Das was not replaced; instead, her job duties were assigned to two other Quality Engineers working in the Department.

### B. Plaintiff's Facts

Ms. Das's employment with Ohio State spanned approximately one year's time, from August of 1995 to August of 1996. Ms. Das continually received positive oral comments about her work, and in early August of 1996 was given a salary increase.

Ms. Das was the only Indian person out of sixty-five full-time non-clerical employees. Ms. Das was also the only foreign native and was one of two persons of color. Co-workers told her that she was being treated differently because of her national origin. Ms. Scheiderer would use the Plaintiff's pending application for permanent residency as a half-joking, half-threatening means of attempting to assert control over Ms. Das. Ms. Das was criticized for her English, as she speaks with a foreign accent and did not use "American English." On a number of occasions, at least two co-workers, including Ms. Scheiderer, mimicked Ms. Das's accent in front of her.

In addition, Ms. Das told her co-workers that she is gay. Ms. Das posted a rainbow flag in her office, and supervisors and co-workers knew that her life partner also worked for Ohio State.

Ms. Das claims that she was subject to cultural insensitivity. In December of

1995, co-workers arranged a "secret santa" gift exchange and a "guess the baby picture" contest to be conducted during an office holiday party. Ms. Das was raised in a country where religious holidays are not celebrated in the workplace and was uncomfortable with these activities. Ms. Das attempted to decline to participate. Ms. Das pointed out that because of her minority status, the baby picture contest was preposterous and would serve to put the spotlight on her. Ms. Das, however, was coerced into participating.

In April of 1996, Ms. Das displayed four cartoons from the "Black in America" issue of the New Yorker magazine. The cartoons were a satire of the status of race relations in American society. Within a few hours of posting the cartoons, Ms. Marsh told Ms. Das that the cartoons were "racially charged" and that she should not post them. When Ms. Das reported the incident to Ms. Scheiderer, Ms. Scheiderer told the Plaintiff to be "more tolerant" towards Ms. Marsh because she likes people "who are like her."

Gabrielle Reissland and Sally Betz are other employees at Ohio State. Both women expressed concerns to Ms. Das about cultural insensitivity. Ms. Reissland, legal counsel for Ohio State, stated in March or April of 1996 that "fat people, people of color, queers, and foreigners" are consistently treated in a discriminatory manner at Ohio State's Medical Center.

In mid-August of 1996, Ms. Das was called in for what she thought was going to be a routine annual review. At that meeting, she was confronted by Ms. Scheiderer and Ms. Migitz. Ms. Das was presented with an unsatisfactory PACE evaluation, and was told that she could either resign or be fired from her job. Ms. Das was troubled by the criticisms of her written communication style and her tone, and denies being disciplined or reprimanded for her written communications. Ms. Das was asked to adopt a more formal writing style, but she was never informed that such counseling amounted to disciplinary action. When Ms. Das was criticized for her "tone" at meetings, Ms. Das explained that this could be based on cultural bias. Ms. Das was also shocked because she had never been disciplined in any manner, nor had she been warned that her work was unacceptable. Ms. Das chose to resign so that she would not be deported from the country.

## III. STANDARD OF REVIEW

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R.CIV.P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1388–89 (6th Cir.1993). In response, the nonmoving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.,* 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.,*

398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The existence of a mere scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *See Anderson,* 477 U.S. at 251, 106 S.Ct. 2505; *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995).

## IV. ANALYSIS

### A. National Origin Discrimination

The Plaintiff has brought claims for national origin discrimination under Title VII, 42 U.S.C. § 2000e; Ohio Revised Code Chapter 4112, and 42 U.S.C. § 1983.

#### 1. Section 1983 Immunity

Ohio State argued that the Eleventh Amendment prevents the filing of a § 1983 against a State and state agencies, including Ohio State. The Plaintiff did not respond to this argument.

■ With few exceptions, the Eleventh Amendment of the United States Constitution prohibits individuals from suing States in federal court. *See Mixon v. State,* 193 F.3d 389, 396–97 (6th Cir.1999). The Eleventh Amendment, however, does not bar suits seeking prospective or injunctive relief. *Wolfel v. Morris,* 972 F.2d 712, 719 (6th Cir.1992); *Bremiller v. Cleveland Psychiatric Inst.,* 879 F.Supp. 782, 787 (N.D.Ohio 1995) (citing *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Edelman v. Jordan,* 415 U.S. 651, 667–68, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). A university, as "[a]n arm of the State, is immune form suit under the Eleventh Amendment...." *Johnson v. University of Cincinnati,* 215 F.3d 561, 571 (6th Cir.2000).

■ Here, Ohio State is immune from suit under § 1983. The Court therefore **GRANTS** summary judgment to the Defendant on the Plaintiff's claim of national origin discrimination brought under 42 U.S.C. § 1983.[1]

#### 2. Title VII and Ohio Revised Code

##### a. Direct Evidence

■ The Plaintiff may bring a claim of national origin discrimination either by presenting direct or indirect evidence.[2] The Sixth Circuit stated in *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1081 (6th Cir.1994), that evidence that would require the jury to infer a fact is not direct evidence. Direct evidence is where an employer's statement directly shows discriminatory motive. *See Schlett v. Avco Fin. Servs., Inc.,* 950 F.Supp. 823, 828 (N.D.Ohio 1996). The Sixth Circuit has noted that direct evidence, in the form of verbal comments, will be similar to an employer telling its employee that "I fired you because you are disabled." *Smith v. Chrysler Corp.,* 155 F.3d 799, 805 (6th Cir.1998). In analyzing discriminatory comments, factors to consider include whether a decision maker or an agent made the comment, whether the comment was related to the decision-making process, and whether the comment and the

---

1. The Court notes that Ms. Das has also requested injunctive relief under § 1983, and that the State is not immune from such relief. However, "[T]itle VII provides the exclusive remedy when the only § 1983 cause of action is based on a violation of Title VII." *Pinelo v. Northern Ky. Univ.,* No. 96–5765, 1998 WL 165136, 1999 U.S.App. LEXIS 6660, at *6 (6th Cir. Mar. 31, 1998); *Day v. Wayne County Bd. of Auditors,* 749 F.2d 1199, 1204 (6th Cir.1984); *Johnson v. Runyon,* No. 97–CV–794, 1999 WL 893841, 1999 U.S. Dist. LEXIS 5748, at *15 (W.D.Mich. Apr. 22, 1999). Ms. Das's § 1983 claim is essentially one of employment discrimination. The Court there-

fore dismisses in its entirety the Plaintiff's claim for national origin discrimination brought under § 1983, as Title VII provides the sole avenue for relief.

2. Claims of discrimination under Chapter 4112 of the Ohio Revised Code follow the same analysis as those brought under Title VII. *See Laderach v. U–Haul of Northwestern Ohio,* 207 F.3d 825, 828 (6th Cir.2000) (citing *Little Forest Med. Ctr. of Akron v. Ohio Civil Rights Comm'n,* 61 Ohio St.3d 607, 575 N.E.2d 1164 (1991)). The Court, therefore, will analyze these claims together.

discriminatory act were close in time. *See Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir.1994).

Once the plaintiff establishes direct evidence, the burden of persuasion shifts to the defendant to show that it would have taken the same adverse employment action had it not been motivated by discrimination. *See Jacklyn v. Schering–Plough Healthcare Prod. Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244–45, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (plurality)); *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1081 (6th Cir.1994).

The Defendant argues that Ms. Das has not presented direct evidence of discrimination. Ohio State contends that there is no link between Ms. Scheiderer's mocking of Ms. Das's speech, her unfavorable PACE evaluation and her ultimate discharge. And, there is no nexus between Ms. Scheiderer joking about Ms. Das's visa application, her unfavorable PACE evaluation and her discharge.

Ms. Das argues that she has presented direct evidence of discrimination. Ms. Das's co-workers and supervisor mocked her Indian accent, and Ms. Das's supervisor intimated threats of non-cooperation with her green card application. Ms. Scheiderer and Ms. Marsh both testified that they were unaware of cultural differences in communication styles with persons from India.

Here, the Court finds that Ms. Das has not presented direct evidence of discrimination. Viewing the facts in a light most favorable to Ms. Das, the comments made by Ms. Scheiderer, Ms. Das's supervisor, were not related to the decision-making process. Furthermore, there is no causal relationship between Ms. Scheiderer's mocking of Ms. Das's accent or her joking about Ms. Das's green card and Ms. Das's ultimate termination. At oral argument, the Plaintiff stated that the comments were made three to six months before Ms. Das's termination, which is not close in time to the adverse employment action.

*See, e.g., Cooley*, 25 F.3d at 1330 (citing with favor *Phelps v. Yale Security, Inc.*, 986 F.2d 1020 (6th Cir.1993), where the court found that two isolated comments, eight and seven months before the employee was laid off, did not support a finding of age discrimination). The Court concludes, therefore, that the Plaintiff has not presented direct evidence of discrimination.

### b. Indirect Evidence

Without direct evidence, a Plaintiff may establish a prima facie case of national origin discrimination under both Title VII, 42 U.S.C. § 2000e, and Chapter 4112 of the Ohio Revised Code, through indirect evidence. To establish a prima facie case of national origin discrimination with out direct evidence, a plaintiff must show she was: (1) a member of a protected class; (2) qualified for the position; (3) the victim of an adverse employment action, and (4) replaced by someone outside of the protected class. *See Ang v. Procter & Gamble Co.*, 932 F.2d 540, 548 (6th Cir. 1991). For the second element of a prima facie case, in ascertaining whether the plaintiff was qualified, a court must look to the plaintiff's qualifications before her allegedly unacceptable performance began. *See Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir.2000) (finding that "it is [ ] inappropriate for the district court in the pre-trial stage to rely on the nondiscriminatory reason for termination to find plaintiff's prima facie case inadequate.").

When a plaintiff is not replaced, she may also meet the fourth element of her prima facie case by demonstrating that a similarly-situated non-minority employee was treated more favorably. Under this method of proof, "[t]he plaintiff must produce evidence which at a minimum establishes (1) that he was a member of a protected class and (2) that for the same or similar conduct he was treated differently than similarly-situated non-minority employees." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992). The non-minority employee must be "similarly situated in all

respects." *Id.* That is, the non-minority employee must "[h]ave dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.*

Once the plaintiff establishes her prima facie case, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for the adverse employment action. *Ang,* 932 F.2d at 548. If the defendant meets its burden of coming forward with a legitimate non-discriminatory reason, the burden shifts back to the plaintiff to demonstrate that the defendant's reason was but a pretext for unlawful discrimination. *Id.; see also Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

The Supreme Court has recently found that "[a] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000).

Ohio State argues that Ms. Das cannot meet the fourth element because Ms. Das was not replaced, but instead her job duties were split between the two remaining Clinical Quality Engineers. In addition, Ohio State argues that Ms. Das cannot present evidence that similarly situated, non-minority employees were treated more favorably. In response, Ms. Das agrees that the only prong at issue is the fourth—whether she was replaced by an individual outside of the protected class. Citing *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978), Ms. Das responds that the *McDonnell Douglas* burden-shifting analysis should not be applied rigidly.

■ The Court finds that Ms. Das has established the first three prima facie elements: she was a member of a protected class as a native of India; second, she resigned in lieu of termination; and third, she was qualified for the position. Ms. Das, however, has not established a prima facie case because she did not show either that she was replaced by someone outside of her protected class, or that similarly-situated non-minority employees were treated more favorably. As for being replaced, it is undisputed that Ms. Das's job duties were assumed by two co-workers. *See Lilley v. BTM Corp.,* 958 F.2d 746, 752 (6th Cir.1992) (finding that "[s]preading the former duties of a terminated employee amongst the remaining employees does not constitute replacement."). And, Ms. Das did not present evidence that similarly-situated non-minority employees were treated differently. The record is devoid of any evidence as outlined by *Mitchell,* of other employees who were supervised by Ms. Scheiderer, who engaged in the same conduct, but who were not terminated. The Court further finds Ms. Das's argument that the prima facie elements should be applied loosely to be inappropriate. This Court cannot pick and choose which elements of a prima facie case to adopt and which to discard on a case-by-case basis.

As Ms. Das has not established a prima facie case of discrimination, the Defendant's Motion for Summary Judgment is **GRANTED** on Ms. Das's claims of national origin discrimination under both Title VII and Ohio Revised Code Chapter 4112.

### B. Public Policy

Ms. Das's next claim is that Ohio State violated public policy by terminating her because of her sexual orientation. To support her public policy claim, Ms. Das relies on Columbus City Code section 2331.03 which prohibits discrimination on the basis of sexual orientation. Ms. Das was an openly gay woman during her employment with Ohio State.

■ In order "to state a claim of wrongful discharge in violation of public policy, a plaintiff must allege facts demonstrating

that the employer's act of discharging him contravened a 'clear public policy.'" *Painter v. Graley*, 70 Ohio St.3d 377, 639 N.E.2d 51 (1994) (syllabus). The "clear public policy" can be based on sources such as statutes, the Constitutions of Ohio and the United States, administrative rules and regulations and the common law. *Painter*, 639 N.E.2d at 51 (syllabus); *see also Collins v. Rizkana*, 73 Ohio St.3d 65, 652 N.E.2d 653, 657–60 (1995).

■ A policy is "clear" if, for example, the General Assembly "adopted a specific statute forbidding an employer from discharging or disciplining an employee on the basis of a particular circumstance or occurrence." *Painter*, 639 N.E.2d at 55. In addition, "other exceptions might be recognized where the public policy could be deemed to be 'of equally serious import as the violation of a statute.'" *Id.* at 55–56 (citing *Greeley v. Miami Valley Maintenance Contractors*, 49 Ohio St.3d 228, 551 N.E.2d 981, 987 (1990)).

■ Section 3, Article XVIII of the Ohio Constitution grants municipalities, such as the City of Columbus, the authority to "[a]dopt and enforce police regulations [that] is limited only by general laws in conflict therewith upon the same subject matter." *Fondessy Enter., Inc. v. City of Oregon*, 23 Ohio St.3d 213, 492 N.E.2d 797, 798 (1986) (syllabus ¶ 1). The General Assembly cannot withdraw this "power of home rule." *Id.* at 799. To determine "[i]f a municipal ordinance is in conflict with the general statute, 'the test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa.'" *Id.* at 798 (syllabus ¶ 2) (citation omitted).

■ This Court must first decide whether Ms. Das has presented a valid claim of violation of public policy under Ohio law. To answer this question, this Court must determine whether the Columbus City Code represents "clear public policy." In *Collins* and *Painter*, the Supreme Court of Ohio gave a list of sources given that can serve as the basis of a public policy tort. The list is premised with "such as," indicating that the list is not meant to be exhaustive, but only serve as a set of examples of possible sources. The City Code is included in the list as either a "statute," or at least under the "such as" penumbra. The Code, therefore, is a possible source for the public policy tort.

The Code represents "clear public policy" as municipalities are given the power under the Ohio Constitution to adopt such legislation, as long as it is not in conflict with State statutes. As the City Code is not in conflict with State statutes, it is of "equally serious import." The Columbus City Code prohibits employment discrimination on the basis of sexual orientation, while the State's discrimination statute, Ohio Revised Code § 4112.02[3] does not prohibit such discrimination. The City's Code adopts greater protections than that of the State, but does not "permit or license[ ] that which the statute forbids and prohibits." Following the holding of *Fondessy*, the City is permitted to adopt greater protections than that of the State. The City Code, therefore, is of "equally serious import as the violation of a statute." *See Painter*, 639 N.E.2d at 55–56. This Court therefore finds that a claim of sexual orientation discrimination may be brought by an aggrieved plaintiff under Ohio's public policy exception based on Columbus City Code section 2331.03. *See Mier v. Certified Oil Co.*, No. 97CVH–01–0203, slip op. (Franklin County C.P. Aug. 26, 1997). Accordingly, the Court concludes that Ms. Das has stated a valid claim.

Viewing the facts in a light most favorable to Ms. Das, however, the Court finds that she has not established a claim of sexual orientation discrimination.[4] Ms.

---

**3.** Ohio's protections are limited to "race, color, religion, sex, national origin, handicap, age or ancestry." OHIO REV.CODE § 4112.02(A).

**4.** In so finding, the Court does not turn a blind eye to the fact that persons of gay, lesbian and bisexual orientation are often discriminated against in the workplace with no legal recourse.

Das's only evidence of discrimination based on her status was that she was the only lesbian in her department, and that she saw Ms. Marsh staring at her rainbow flag. These two facts are not sufficient to establish a case of sexual orientation discrimination under Ohio's public policy exception, especially since Ms. Marsh was not the individual who terminated the Plaintiff. The Court therefore **GRANTS** Ohio's State's Motion for Summary Judgment on Ms. Das's claim of violation of public policy under Ohio law.

### C. Implied Contract

Ohio State argues that Ms. Das's employment was at-will and that Ms. Das did not meet her burden to show that either an express or implied contract for employment was created. Ms. Das did not respond to this argument.

Federal Rule of Civil Procedure 56(e) provides: "[W]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings ... the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(c). The Sixth Circuit, interpreting Rule 56, has found, "[w]here the movant brings forward and supports his motion for summary judgment, his opponent may not rest merely upon his pleadings but rather must come forward to show genuine issues of fact." *Bryant v. Com. of Kentucky*, 490 F.2d 1273, 1275 (6th Cir.1974); *see also Gerber v. Silver Recovery Sys.*, 729 F.2d 1461 (6th Cir.1984); *Spells v. Cuyahoga Community College*, 889 F.Supp. 1023, 1026 (N.D.Ohio 1994).

Here, Ms. Das did not bring forward additional evidence to support her claim. The Court therefore **GRANTS** summary judgment to the Defendant on the claim of breach of implied contract.

### V. CONCLUSION

Based on the foregoing, the Court **GRANTS** summary judgment to the Defendant on the Plaintiff's national origin discrimination claim brought under Title VII, Ohio Revised Code Chapter 4112 and 42 U.S.C. § 1983. The Court further **GRANTS** summary judgment to the Defendant on Ms. Das's claim of sexual orientation discrimination in violation of Ohio's public policy tort. And finally, the Court **GRANTS** summary judgment to the Defendant on the Plaintiff's claim of breach of implied contract claim.

**IT IS SO ORDERED.**