[Cite as *Osborne v. Leroy Township*, 2014-Ohio-5774.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| RICHARD M. OSBORNE, TRUSTEE, et al., | : | **O P I N I O N** |
| | : | |
| Plaintiffs-Appellants, | | |
| | : | **CASE NO. 2014-L-008** |
| - vs - | | |
| | : | |
| LEROY TOWNSHIP, | | |
| | : | |
| Defendant-Appellee. | | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 12 CV 002089.

Judgment: Affirmed in part; reversed in part and remanded.

*Erik L. Walter*, Dworken & Bernstein Co., L.P.A., 60 South Park Place, Painesville, OH 44077 (For Plaintiffs-Appellants).

*Abraham Cantor*, Johnnycake Commons, 9930 Johnnycake Ridge Road, Suite 4-F, Concord, OH 44060 (For Defendant-Appellee).


THOMAS R. WRIGHT, J.

{¶1}    This accelerated-calendar appeal is from a final order of the Lake County Court of Common Pleas, granting summary judgment in favor of appellee, Leroy Township, on both claims in the underlying civil action.  Appellants, Richard M. Osborne and Great Plains Exploration, L.L.C., seek reversal of the trial court's determination that the Leroy Township zoning resolution precludes them from maintaining piles of concrete and asphalt debris to be used in repairing roadways associated with an oil and gas well, and a sign requesting concrete and asphalt.  For the following reasons, the trial court's

decision as to the piles of concrete and asphalt debris is affirmed, but is reversed as to the disputed sign.

{¶2} Osborne owns land located at the interchange of Interstate 90 and Vrooman Road in Leroy Township, Lake County, Ohio. The parcel is vacant except for an oil and gas well that is owned by Great Plains Exploration. As the operator of the well, Great Plains Exploration is the holder of all necessary state permits governing the production of the oil and gas.

{¶3} In addition to the well, the parcel has a roadway running from the site of the well to Vrooman Road. Due to the nature of the vehicles using the roadway, it needs to be constantly repaired. To facilitate these repairs, Osborne and Great Plains Explorations, appellants, maintain piles of concrete and asphalt debris on the property. Moreover, to facilitate their accumulation of the debris, they erected a sign at the front of the parcel that reads: "WE TAKE CONCRETE & ASPHALT."

{¶4} In March 2010, appellants filed an application for a permit to have the sign. As part of the application, they explained that the concrete and asphalt debris would be "stored" in piles on the property, and that the debris would be used to repair the existing roadway. Approximately one month later, appellee's zoning inspector sent appellants a letter stating that neither the sign nor the storage of the debris on site are permissible under the township zoning resolution. In relation to the storage or accumulation of the debris, the inspector cited two different sections of the zoning resolution supporting his determination. However, the letter also stated that the zoning resolution does not forbid appellants from bringing the debris upon the parcel and immediately applying it to the roadway.

{¶5} In addition, the zoning inspector's letter stated that appellants could apply

for a conditional use permit regarding the storage of the concrete and asphalt debris, and a variance for the proposed sign. Instead of attempting to obtain the permit or variance, appellants erected the sign and began to accumulate the debris. This ultimately led to a criminal action against Osborne in a local municipal court. Before that case proceeded to trial, the parties negotiated a settlement under which appellants agreed to remove the sign in exchange for dismissal.

{¶6} While the criminal matter was pending, appellants instituted the underlying civil proceeding for declaratory judgment and injunctive relief. Under their declaratory judgment claim, appellants asserted that appellee does not have the authority to enforce any zoning law limiting their use of the subject parcel because the regulation of oil and gas wells is pre-empted by state law. They also asserted that, even if separate township regulation is permissible, the two specific sections relied upon by appellee's zoning inspector prohibiting storage of debris are inapplicable to their property.

{¶7} Ultimately, appellee moved for summary judgment on appellants' entire complaint. As to both the debris and the sign, appellee generally contended that the governing sections of the Leroy Township Zoning Resolution should be upheld because they do not conflict with any provision in R.C. Chapter 1509, the state statutory scheme for the regulation of oil and gas production. Appellee cited the deposition of Steve Opritza, a senior geologist with the Ohio Department of Natural Resources, Division of Oil and Gas Resources Management. As part of his testimony, Opritza testified that his department has never regulated the storage of materials used to create or repair access roads for oil and gas wells. Similarly, he testified that his department has no regulations governing the sign that appellants erected.

{¶8} In its response to the summary judgment motion, appellants attempted to

3

contradict Opritza's testimony by presenting the report of its own expert witness. Although the expert report was quoted extensively in the response, a copy of the report was not attached to appellants' submission. Therefore, the sole evidentiary item that appellants could properly cite in their response was Richard M. Osborne's affidavit, previously attached to their complaint.

{¶9} After appellee submitted a reply brief, the trial court granted summary judgment against appellants on their entire complaint. In concluding that the pertinent provisions of the township zoning resolution are enforceable despite the existence of the state statutory scheme, the trial court did not predicate its analysis upon the Opritza deposition. Instead, the court engaged in a purely legal discussion of the zoning resolution and R.C. Chapter 1509. Regarding the debris, the court held that R.C. Chapter 1509 is only meant to cover the construction, maintenance, and repair of access roads, not the storage of materials used on the roads. Thus, appellee did not act beyond the scope of its authority in banning the onsite storage. The trial court also upheld the zoning inspector's conclusion that the sign is not allowed pursuant to section 22.11 of the township zoning resolution.

{¶10} In appealing the summary judgment ruling, appellants assert two assignments of error for review:

{¶11} "[1.] The trial court erred by granting [appellee's] motion for summary judgment because a genuine issue of material fact existed as to whether appellee's zoning code conflicts with ORC 1509.02.

{¶12} "[2.] The trial court erred by granting [appellee's] motion for summary judgment because a genuine issue of material fact existed as to whether appellee's zoning code is contradictory and unenforceable as written."

4

{¶13} Because the subject matter of the two assignments overlap, they will be addressed together. Essentially, appellants argue that the trial court committed two errors in deciding that the township zoning resolution prohibits both the sign and storage of concrete and asphalt debris. First, they contend that the sections of the resolution cited by the zoning inspector are too vague to be interpreted to ban the two uses of the property. Second, they posit that, even if the zoning resolution can be construed to forbid the two uses, the resolution is still not enforceable because the state statutory scheme, R.C. Chapter 1509, pre-empts all local laws governing the use of land containing an oil and gas well.

{¶14} In setting forth these arguments, appellants have worded the assignments in terms of whether the evidentiary materials were sufficient to create a genuine issue of material fact. As noted above, in responding to appellee's summary judgment motion, appellants tried to present a report of an expert witness in order to offset the deposition testimony of the senior geologist with the Ohio Department of Natural Resources. Yet, in issuing its decision, the trial court did not rely upon either side's expert in construing R.C. Chapter 1509 or the township zoning resolution. As we agree with the trial court's analysis that the testimony is irrelevant to disposition, we too disregard that testimony.

{¶15} As also discussed above, in support of his determination that concrete and asphalt debris cannot be stored on the property, the zoning inspector pointed to two separate sections of the zoning resolution. For purposes of our analysis, it is only necessary to analyze one of the two sections.

{¶16} Section 22 of the Leroy Township Zoning Resolution sets forth regulations governing oil wells, gas wells, oil and gas lines, and access roads to such wells. This section has specific provisions controlling where such wells can be placed. For

5

example, section 22.04 provides that an oil and gas well cannot be placed within 500 feet of a known source of water or any type of building. However, section 22 does not contain any provision limiting the zone or type of land upon which such wells can be placed.

{¶17} Since appellants' property was located at the intersection of a local road and an interstate highway, it was zoned as a "special interchange" area for purposes of the zoning resolution. In relation to the permissible uses in a special interchange area, section 29.01 states:

{¶18} "Only at interchanges at Limited Access Highways, the following uses and no others shall be classed B-2 uses and permitted:

{¶19} "1. Hotel, motel

{¶20} "2. Gasoline service station

{¶21} "3. Car wash

{¶22} "4. Offices: Administrative, professional, and business

{¶23} "5. Restaurant of any type

{¶24} "6. Auto and truck rental agency

{¶25} "7. Parking lots for vehicles associated with a principal use

{¶26} "8. Public safety and service facility

{¶27} "9. Retail or wholesale sales

{¶28} "10. Any similar use approved through the zoning procedure."

{¶29} In applying section 29.01, the zoning inspector did not argue that the section precludes the placement of oil and gas wells on "special interchange" areas, instead, ceding that such use is permitted under R.C. 1509.02. The inspector only found that, since the storage of concrete and asphalt debris is not one of the permitted

6

uses listed in the section, the debris cannot be stored on the property prior to its use on the access road. As part of his letter to appellants denying their request for the sign, the inspector stated that appellants did not need a permit to bring the debris upon the property and immediately apply it to their roadway; rather, the section only acted to forbid the storage of the debris.

{¶30} There is no dispute that appellants' parcel is located in a "special interchange" district; hence, section 29.01applies. Moreover, given that the section expressly states that no other uses are allowed except for the ten listed uses, the storage of concrete and asphalt debris is impermissible.

{¶31} In contending that section 29.01 is too vague to be enforceable, appellants emphasize that the terms "wholesale" and "retail" sales, as stated in the ninth permitted use for a "special interchange" area, are not defined anywhere in the zoning resolution. However, appellants did not present any evidence tending to show that the proposed piles of debris were meant to be sold in any manner. Therefore, regardless of how the two terms are defined, the "sales" permitted use under section 29.01 cannot be invoked by appellants as a means of justifying the storage of the debris on the property.

{¶32} In light of the foregoing analysis, the trial court did not err in holding that section 29.01 prohibits the storage of concrete and asphalt debris on land zoned as a "special interchange" area, notwithstanding the fact that an oil and gas well is present. The question then becomes whether section 29.01 conflicts with statewide laws governing oil and gas wells. Stated differently, did Leroy Township lack the authority to ban debris piles on property containing an oil and gas well because this type of regulation is pre-empted by state law?

{¶33} In relation to the authority of a township to institute zoning regulations that

7

address the same subject matter as a state statute, this court has stated:

{¶34} "Initially, we point out that townships of Ohio have no inherent or constitutionally granted police power, the power upon which zoning legislation is premised. *Bd. of Twp. Trustees of Bainbridge Twp. V. Funtime, Inc.* (1990), 55 Ohio St.3d 106, 108, * * *. 'Whatever police or zoning power townships of Ohio have is that delegated by the General Assembly, and it follows that such power is limited to that which is expressly delegated to them by statute.' *Yorkavitz v. Bd. of Trustees of Columbia Twp.* (1957), 166 Ohio St. 349, 351, * * *. It is therefore axiomatic that a township zoning resolution may not stand in conflict with the general legislation which enables its existence. See Id. The test to determine whether a conflict exists between a township's zoning resolution and a general law of the state is 'whether the ordinance permits or license that which the statute forbids or prohibits, or vice versa.' *Fondessy Enterprises, Inc. v. Oregon* (1986), 23 Ohio St.3d 213, * * *, paragraph two of the syllabus." *Amer. Outdoor Advertising Co., LLC v. Franklin Twp. Bd. of Zoning Appeals*, 171 Ohio App.3d 131, 2008-Ohio-3063. ¶16 (11th Dist.).

{¶35} The issue of whether a township zoning law conflicts with a general state statute raises a question of law, which is reviewed de novo on appeal. *Smith Family Trust v. City of Hudson Bd. of Zoning and Building Appeals*, 9th Dist. Summit No. 24471, 2009-Ohio-2557, ¶10.

{¶36} R.C. Chapter 1509 governs the conservation of natural resources in Ohio. Since there is no provision in the statutory scheme indicating that it is not intended to have uniform application throughout the entire state, the chapter is considered a general law for purposes of a "conflict" analysis. *Id.* at ¶11. As to the regulation of oil and gas wells, R.C. 1509.02 provides, in pertinent part:

8

{¶37} "There is hereby created in the department of natural resources the division of oil and gas resources management, which shall be administered by the chief of the division of oil and gas resources management. The division has sole and exclusive authority to regulate the permitting, location, and spacing of oil and gas wells and production operations within the state. The regulation of oil and gas activities is a matter of statewide interest that requires uniform statewide regulation, and this chapter and rules adopted under it constitute a comprehensive plan with respect to all aspects of the locating, drilling, and operation of oil and gas wells within the state, including site restoration, and disposal of wastes from those wells."

{¶38} For purposes of R.C. 1509.02, the term "production operation" covers "all operations and activities and all related equipment, facilities, and other structures that may be used in or associated with the exploration and production of oil, gas, or other mineral resources that are regulated under this chapter, including operations and activities associated with site preparation, access road construction, well drilling, well completion, well stimulation, well site activity, reclamation, and plugging." R.C. 1509.01(AA).

{¶39} Given the broad nature of the language in R.C. 1509.02 and the statutory definition of production operation, there can be no dispute that the department of natural resources has been granted exclusive authority over all critical aspects of the process of extracting oil and gas from the ground and its removal from the property. This includes control over the well site and the access road used to travel to and from the well site. As to the access road, in light of the specific reference in the statutory definition to the construction of the road, it follows that the department has authority over repairs to the road and the need to maintain the road in proper shape.

9

{¶40} Nevertheless, while the department of natural resources obviously has the power to dictate the kinds of materials to be used in the construction and maintenance of the access road, there is no language in the two cited provisions indicating that the extent of this authority extends to the storage of the road materials. Until such materials are actually used in the construction or maintenance of the road, they cannot be said to be associated with the production of the oil and gas. Accordingly, since R.C. 1509.02 and 1509.01(AA) do not address the issue of storage of concrete and asphalt debris, a township is not barred from controlling the storage of the debris through its zoning laws. Section 29.01 of the Leroy Township Zoning Resolution does not forbid an act, i.e., the on-site storage of road materials, which is under the sole jurisdiction of the department of natural resources.

{¶41} As there is no conflict between appellee's zoning resolution and the state statutory scheme governing gas and oil wells, the trial court did not err in declaring that storage of debris is prohibited.

{¶42} The resolution of the "sign" issue involves a different analysis. As previously noted, the sign on the property stated that appellants, as owners of the land and the well, would accept "Concrete & Asphalt." In denying appellants' application for a sign permit, the township zoning inspector concluded that the sign could not be maintained on the property because it is impermissible under section 22.11 of the zoning resolution. This section provides, in its entirety:

{¶43} "A sign shall be posted and maintained at all times showing:

{¶44} "1. Access street name, number, or both.

{¶45} "2. Owner.

{¶46} "3. Lease name.

10

{¶47} "4. Well number.

{¶48} "5. Permit number.

{¶49} "6. All emergency telephone numbers."

{¶50} In his denial letter, the zoning inspector interpreted section 22.11 to permit only one type of sign on a property containing an oil and gas well; i.e., a sign that sets forth the specific information cited in the section. According to the inspector, since the information on appellants' sign was not expressly referenced in section 22.11, it could not be the subject of a sign on the property in question.

{¶51} As part of its summary judgment ruling, the trial court concluded that the zoning inspector's interpretation of the township law must be upheld. Specifically, the court held that "the interpretation that Section 22.11 only allows the specific information to be included on a sign on a property with an oil and gas lease is not unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by a preponderance of the substantial, reliable, and probative evidence on the whole record." In essence, the trial showed deference to the inspector in the interpretation of the township zoning resolution.

{¶52} In the context of an appeal from a decision of a board of zoning appeals, the Supreme Court of Ohio has recently confirmed that a common pleas court owes no duty of deference to an administrative interpretation of a local zoning ordinance unless the provision at issue is ambiguous. *Cleveland Clinic Found. v. Bd. of Zoning Appeals of the City of Cleveland*, ___ Ohio St.3d ___, 2014-Ohio-4809, ¶29. "'A court, as well as an agency, must give effect to the unambiguously expressed intent of the (legislature).'" *Id.*, quoting *Lang v. Ohio Dept. of Job & Family Servs.,* 134 Ohio St.3d 296, 2012-Ohio-5366, ¶12.

11

{¶53} Notwithstanding the fact that the *Cleveland Clinic* case involved a zoning board's interpretation of a local zoning ordinance, the same rationale applies to a zoning inspector's interpretation of his township's laws. Given that a zoning inspector is an administrative official, his interpretation of the local ordinance is not entitled to any deference if the language of the disputed provision is clear and unambiguous. In such a situation, the trial court's duty is to enforce the local ordinance as written.

{¶54} In this case, the wording of section 22.11 of the township zoning resolution is clear and unambiguous. The section only states that if a tract of land contains an oil and gas well, there must be a sign on the property setting forth the required information concerning the well. There is simply no language in section 22.11 expressly stating that the "informational" sign is the only type of sign that can be posted and maintained on a "well' property. Thus, section 22.11 does not contain any prohibition against appellants' "concrete & asphalt" sign, and the trial court was obligated to follow the clear language of the provision regardless of the zoning inspector's interpretation.

{¶55} As a separate reason for ruling in favor of appellee on the sign issue, the trial court concluded that a sign regarding the acquisition of concrete and asphalt debris could not be posted and maintained on the property when it was impermissible to keep piles of the debris on the property. However, this aspect of the trial court's analysis fails to acknowledge the distinction between the acquisition of the debris and the storage of the debris on the property. Given the limited arguments made in the zoning inspector's denial letter and appellee's summary judgment motion, appellee has only demonstrated that appellants are required under section 29.04**3** of the zoning resolution to have any sign conform to section 23 of the zoning resolution. There has been no showing that appellee's zoning resolution as it relates to signage prohibits the subject sign. As to this

12

point, even though section 9.16 of the zoning resolution prohibits the storage of "building materials" upon land zoned for residential, industrial or business use, that provision only applies to "vacant lots." Accordingly, since appellants' present sign only references the acquisition of concrete and asphalt debris, it cannot be forbidden solely on the grounds that it refers to an impermissible use of the "well" property.

{¶56} In the briefs before this court, reference has been made to section 23 of the township zoning resolution that generally governs the placement or maintenance of signs throughout the township. Although the trial court cited this separate section in its summary judgment decision, it expressly held that, since a copy of that section was not submitted as part of the evidentiary materials, it could not render any determination regarding the applicability of that section to the facts of this case. Thus, upon remand, appellee would be entitled to raise new arguments predicated upon the separate "sign" section or any other argument the trial court has not addressed. Our holding is limited to the proposition that appellee was not entitled to summary judgment in relation to the "sign" issue on the grounds that appellants' present sign is prohibited under section 22.11.

{¶57} "Summary judgment is proper where (1) there is no genuine issue of material fact remaining to be litigated; (2) the movant is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and, viewing the evidence in the non-moving party's favor, that conclusion favors the movant." *DeFranco v. Judy*, 11th Dist. Geauga Nos. 2012-G-3114 and 2013-G-3135, 2014-Ohio-8, ¶10. Pursuant to the foregoing discussion, appellee satisfied this standard as to the issue of whether appellants are barred from maintaining piles of concrete and asphalt debris on the Osborne property. To that extent, appellee is

entitled to prevail on appellants' claims for declaratory judgment and injunctive relief in part. However, in relation to the "sign" issue, the trial court erred in holding that appellee is entitled to summary judgment on that point.

{¶58} Appellants' first and second assignments of error have merit in part. As to the issue of whether appellants can maintain the disputed sign on the Osborne property, the judgment of the Lake County Court of Common Pleas is reversed, and the case is hereby remanded for further proceedings consistent with this opinion. In all other respects, the judgment of the trial court is affirmed.

TIMOTHY P. CANNON, P.J.,

COLLEEN MARY O'TOOLE, J.,

concur.